## ATKIN *v.* VAN SICKLE.

1. WITNESSES—MATTERS EQUALLY WITHIN KNOWLEDGE OF DE-
CEASED—HOSTILE WITNESS—WAIVER.

Where, in an action ·by an administratrix for an accounting
of the proceeds of certain life insurance policies, claimed by
defendant to have been absolute sales and by complainant
to have been assigned as security only for advances to
deceased, complainant called defendant for cross-examina-
tion under the opposite party statute (Act No. 307, Pub.
Acts 1909), and questioned him as to matters equally
within the knowledge of the deceased, although such testi-
mony was clearly incompetent under Act No. 30, Pub.
Acts 1903, complainant is *held* to have waived the benefit
of the latter act.

2. SAME—APPEAL AND ERROR—EXCEPTION—SAVING QUESTIONS FOR
REVIEW.

And where no proper objection was made by complainant to
the action of defendant's counsel in later continuing the
examination in reference to the same matter, she cannot
now successfully urge the inhibition of the statute.

3. EVIDENCE—ASSIGNMENTS—LIFE INSURANCE—BURDEN OF PROOF.

Where, in an action by complainant ·administratrix for an
accounting of the proceeds of certain life insurance policies,
the assignments to defendant were absolute in form, the
burden of proof is upon complainant to establish her claim
that they were made as security only.

4. SAME.

Evidence examined, and *held*, to establish the fact that the
policies in question were assigned as security only.

Appeal from Wayne; Mandell, J. Submitted No-
vember 20, 1914. (Docket No. 145.) Decided Sep-
tember 28, 1915.

Bill by Katherine C. Atkin, administratrix of the
estate of William L. Atkin, deceased, against William
Van Sickle and another for an accounting of the pro-

ceeds of certain life insurance policies alleged to have been assigned to defendants as security. From a decree for complainant, defendant Van Sickle appeals. Affirmed.

*William J. Weakley,* for complainant.

*Matthew B. Whittlesey* and *Irvin Long,* for defendant Van Sickle.

BIRD, J. The question in this case is whether certain assignments of life insurance policies were absolute sales, or whether they were made merely for the purpose of securing the repayment of certain loans negotiated by the insured. William L. Atkin was the insured, and was the husband of complainant. For several years prior to his death he was a life insurance agent. His health commenced to fail in 1908, and after that he was obliged to negotiate loans to meet his necessities from time to time up to his death in August, 1912. Some time in 1909, he obtained certain loans from defendant Whittlesey, aggregating, with interest, $1,785.74, and assigned to him as security two policies. Later, and in September, 1910, he was advised to go to California for his health, and he applied to Whittlesey to increase the loan. Whittlesey not being able at that time to make a further loan, defendant Van Sickle, Atkin's former employer and friend, offered to advance the money for the California trip. Whittlesey then assigned the two policies to Van Sickle. Van Sickle continued to loan Atkin funds for his expenses in California, and also for the purpose of paying the premiums on his policies, and received an assignment of other policies. In the summer of 1912, Van Sickle made a trip to California, and while there saw Atkin and promised to stand by him to the end, and after his death to pay his funeral expenses and his debts, and subsequently he was furnished a list of his

credictors and the amount owing to each. Van Sickle claims that a full settlement was had between them at that time. Van Sickle faithfully carried out his promise to his friend, and when everything was paid he found that he had advanced $7,080.27. The amount received from the insurance policies exceeded this sum by $1,785.74, and it is this sum which the chancellor, after the hearing, ordered paid to the estate, holding that the assignments were made as security for the loans. Defendant Van Sickle has appealed, and his claim is that the testimony does not sustain the conclusion of the chancellor.

The administratrix and complainant called defendant Van Sickle as a witness under the opposite party statute of 1909, and during the examination the following occurred, touching his conversation or agreement with Atkin in California in the summer of 1912:

"After returning to Detroit I called up Mrs. Atkin, made an appointment at my office, waited for an hour, and she did not keep it. I met her later on the street with Mr. Leonard. I told her how well Will looked at that time, and it was she who discussed about the divorce. She asked if Atkin had made any insurance over to her. I told her, 'No.'

"*Q.* She asked you if you had gotten fixed up, and you said, 'He has fixed me up for a time'?

"*A.* I don't know as I said 'fixed me up for a time,' I said, 'Fixed me up,' which he did.

"*Q.* Didn't you say, 'When that is gone, and I want some more, he promised he would?'

"*A.* Yes, sir; and he would, too. I promised to look after Mr. Atkin as long as he lived, and furnish nurses, etc. (Objected to by complainant). And that is the reason he gave the policy. Yes; he would look after me all right."

Later, upon examination by his own counsel, the witness went into detail with reference to the conversation and understanding with Atkin in California, and no protest nor objection was made to its reception by com-

plainant. The chancellor expressed the opinion that this testimony was incompetent under the statute, and refused to consider it in reaching his conclusion. Appellant claims that the statute was waived by complainant, and that the chancellor should have given the testimony due weight. The testimony was clearly incompetent, because it related to an oral conversation with the deceased with reference to the assignment of the insurance; but we think the statute was waived by the complainant. A part of the conversation was developed by complainant's counsel. True, a naked objection was interposed; but no reason was assigned therefor, and no objection was interposed to the recital of the additional conversation, when examined by his own counsel. Where an administratrix and her counsel sit by without making the proper objection, or any objection, to the admission of incompetent evidence, they should not be permitted afterward to successfully urge the inhibition of the statute. *Barbier* v. *Young,* 115 Mich. 100 (72 N. W. 1096) ; *Fox* v. *Barrett's Estate,* 117 Mich. 162 (75 N. W. 440).

The inference is, from the chancellor's opinion, that but for the exclusion of this incompetent testimony his conclusion might have been different; but we find difficulty in reaching a different conclusion than he did, even by considering the alleged incompetent testimony. It cannot be questioned that the policies assigned to Whittlesey were merely for security. He so testifies. Whittlesey assigned them to Van Sickle. The status of the policies must have been the same in the hands of the assignee as in the hands of Whittlesey, unless later changed to an absolute sale. We find nothing in the testimony which convinces us that such a change was made. The other policies assigned directly to Van Sickle are absolute in form, and of course the burden was on complainant to show that the assignments were made as security. We are led to the conclusion that

the policies were assigned merely for security from the fact that:

(*a*) Notes were executed and delivered to Van Sickle with each advancement or loan made. While this is not conclusive, it is very persuasive in reaching the conclusion.

(*b*) The interest on the several notes was computed, and, when due, new obligations were given to cover them, and this practice was true of the premiums upon the policies that were paid by Van Sickle.

(*c*) Van Sickle says that, if he advanced more money, he expected Atkin would assign other policies. This is rather inconsistent, if the engagement was an absolute one.

(*d*) Neither Atkin's letters nor his conversation with Van Sickle in California indicate that he regarded the assignments as absolute.

It is urged as against this view that the assignments upon their face are absolute. The assignments show this, but this fact is not as convincing as it would have been had not the assignments to Whittlesey as collateral security been made in the same form. It is also argued that the deceased expressed a determination that his wife should not share in his property. This is to be found in one of his own letters. It is quite likely that Atkin's feelings at the last were in accordance with this expression; but the force of this point is lessened by the fact that this bitterness arose only after she refused to go to him in California, and at that time at least three of the assignments had been made. And then there is the further consideration in this connection that, if he cared nothing for his wife, he did for his aged mother and his boy, and consequently must have had a desire to protect them.

Defendant Van Sickle's own testimony on this question is far from being conclusive. He does not say in so many words that the assignments were absolute

sales. He details no conversation with Atkin while in California which is conclusive on that point. The conversation which he does detail is not altogether inconsistent with the theory that the assignments were regarded by both as security. True, he testifies that he *claims* the assignments are absolute, and he also says he had a full settlement with Atkin while in California; but he might have had a full settlement and retained the policies as security.

Complaint is made by the appellant because certain memoranda made by Atkin, giving a history of the policies, were admitted and considered by the court. It is claimed this testimony was self-serving and incompetent. This testimony has not been considered by us in reaching a conclusion, so it will be unnecessary to consider it.

We are of the opinion that the chancellor reached the right conclusion, and the decree of the trial court will be affirmed, with costs of both courts to the complainant.

BROOKE, C. J., and KUHN, STONE, OSTRANDER, MOORE, and STEERE, JJ., concurred.

The late Justice MCALVAY took no part in this decision.