BAKKER *v.* WELSH.

Physicians and Surgeons — Surgical Operations — Death — Minor Patient—Consent of Parent.

> Where a full grown boy, accompanied by adult relatives, after several visits to a physician's office, and after due consideration, submits to the administration of an anæsthetic preparatory to the performance of a minor surgical operation, and dies during the administration of the anæsthetic, and there is nothing to indicate that his father's consent to the operation would not have been freely given if asked, and nothing to indicate to the physician that the father did not approve, the administrator of the boy's estate cannot recover damages from the physician for his death under the death act because the father's consent was not obtained.

Error to superior court of Grand Rapids; Stuart, J. Submitted January 30, 1906. (Docket No. 68.) Decided July 3, 1906.

Case by Jans Bakker, administrator of the estate of Stephen Bakker, deceased, against D. Emmett Welsh and Ralph Apted for the negligent killing of plaintiff's intestate. There was judgment for defendants on a verdict directed by the court, and plaintiff brings error. Affirmed.

*Lombard & Hext,* for appellant.

*Crane & Norris,* for appellees.

Moore, J. Stephen Bakker died upon the operating table at a hospital in Grand Rapids, while defendant Apted was administering to him chloroform preparatory to the removal of a tumor by the defendant Welsh. The plaintiff is the father of the deceased, and, after being appointed administrator of the estate of deceased, brought this suit; his counsel stating upon the trial that his claim was under what is known by the lawyers

and the courts as the "Death Act." The trial judge directed a verdict in favor of the defendants. The case is brought here by writ of error.

Stephen Bakker was 17 years old. He lived with his father on a farm. He was a large healthy-appearing person. He had a tumor upon his left ear about the size of a dove's egg. Some time before his death he had received treatment, and the tumor nearly disappeared; but prior to the middle of February, 1904, it reappeared, and he came to Grand Rapids to consult some physician about it. He had an aunt about 60 years old and two adult sisters living in Grand Rapids, with whom he went to the office of the defendant Welsh, who was a specialist and had practiced medicine and surgery a long time. After an examination he was told it would be necessary to have a microscopic examination made to determine the character of the growth, and he was sent to Dr. Williams, another specialist, who made an incision and obtained a specimen from the tumor, and young Bakker returned to his father's. On the following Saturday or Sunday he again went to the office of Dr. Welsh, accompanied by at least one of his sisters, and was informed of the report made by Dr. Williams, and was told it would be best to have the tumor removed by a surgical operation at the hospital.

The testimony is somewhat conflicting as to what was said. The sister claims Stephen objected to taking an anæsthetic, and was told there was no danger. The doctor says that he told him there was always some danger in taking an anæsthetic, but that he advised him to have the operation performed. On Tuesday afternoon Stephen, with his aunt and at least one sister, went again to the office of Dr. Welsh and was sent from there to the hospital, where they all understood an operation should be performed the following day. In the meantime Dr. Welsh had arranged with Dr. Apted, an expert in the administration of anæsthetics, to administer the chloroform. A careful examination of the heart and lungs of the young man was made. They appeared to be normal, and in the

presence of the hospital nurse and the doctors, with the usual appliances for successful operations at hand, young Bakker was put upon the table. Dr. Apted began to administer chloroform by means of the mask and drop method, and had administered about one-third of an ounce, taking from seven to ten minutes in which to do it, and Dr. Welsh was just about to commence the operation, when suddenly the heart of the patient stopped beating. Every means known to the profession was used to revive the patient, but he was already dead. The record shows the father did not know an operation was to be performed. There were two counts in the declaration. Stripped of legal verbiage, the first count stated that Stephen Bakker was a minor and it was known to the defendant Welsh he was a minor, and that it was Dr. Welsh's duty to inform the father and get his consent before entering upon this operation. The second count charges what is known as malpractice or want of skill in the operation, and that young Bakker died by reason of an improper administration of an anæsthetic. The record, instead of disclosing want of skill in the operation, shows quite the contrary. We have no hesitancy in saying the trial judge was quite right in so saying when he directed a verdict.

We then come to the question: Are defendants liable in this action because they engaged in this operation without obtaining the consent of the father? Counsel for the plaintiff are very frank with the court, and say in their brief:

"We are unable to aid the court by reference to any decisions in point. We have devoted much time and research to this interesting question, but have been unable to find any decisions of a higher court either supporting or opposing the plaintiff's contention, and we will therefore have to be content by calling the court's attention to such general reasoning as leads us to take the view herein contended for."

They then argue at length, and with a good deal of force, that, as the father is the natural guardian of the child, and

is entitled to his custody and his services, he cannot be deprived of them without his consent. We quote:

" We contend that it is wrong in every sense, except in cases of emergency, for a physician and surgeon to enter upon a dangerous operation, or, as in this case, the administration of an anæsthetic, conceded to be always accompanied with danger that death may result, without the knowledge and consent of the parent or guardian. It is against public policy and the sacred rights we have in our children that surgeons should take them in charge without our knowledge and send to us a corpse as the first notice or intimation of their relation to the case."

On the part of defendants it is contended:

1. Consent of the father was unnecessary.
2. The lack of consent was not the cause of the boy's death, hence not actionable.
3. That if it were, the action does not survive under the death act.
4. That the action, if any, is in the father, not in the administrator.

We do not think it necessary to a disposition of the case to decide all of the defenses interposed by the defendant. The record shows a young fellow almost grown into manhood, who has been for a considerable period of time, while living with his father, afflicted with a tumor. He has attempted, while at home, to have it removed by absorption. It does disappear, but after a time it reappears. He goes up to a large city, and with an aunt and two sisters, all adults, submits to examination, receives some advice, and goes back to his father with an agreement to return later to receive the report of the expert who is to make the microscopic examination. He returns accordingly, and, with at least some of his adult relatives, arranges to have a surgical operation of a not very dangerous character performed. Preparations are made for its performance. There is nothing in the record to indicate that, if the consent of the father had been asked, it would not have been freely given. There is nothing in the record to indicate to the doctors, before entering upon the

operation, that the father did not approve of his son's going with his aunt and adult sisters, and consulting a physician as to his ailment, and following his advice. We think it would be altogether too harsh a rule to say that, under the circumstances disclosed by this record, in a suit under the statute declared upon, the defendants should be held liable because they did not obtain the consent of the father to the administration of the anæsthetic.

Judgment is affirmed.

MCALVAY, GRANT, OSTRANDER, and HOOKER, JJ., concurred.