RISHWORTH et ux. v. MOSS et al.

(Court of Civil Appeals of Texas. San Antonio. May 28, 1913. On Motion for Rehearing, June 25, 1913.)

PHYSICIANS AND SURGEONS (§ 15*)—OPERATION ON CHILDREN—AUTHORITY.

A child 11 years of age was taken by her adult sister to a surgeon, who without the knowledge of the child's parents, who could easily have been communicated with, permitted the surgeon to anæsthetize the child for the removal of adenoids. There was no emergency, nor was the life of the child dependent on the operation, and during the performance thereof the child died. Held, that the child had no authority to consent to the performance of the operation on its own behalf, and the sister's authority to authorize such operation depended on whether the parents' authority had been delegated to her; and, in the absence of any evidence to that effect, the performance of the operation by the physician was unlawful, so as to warrant recovery for the death of the child, independent of the question of negligence in the performance of the operation.

[Ed. Note.—For other cases, see Physicians and Surgeons, Cent. Dig. § 32; Dec. Dig. § 15.*]

Appeal from District Court, Bexar County; A. W. Seeligson, Judge.

Action by W. H. Rishworth and wife against Robert E. Moss and others. Judgment for defendants, and plaintiffs appeal. Reversed and remanded.

H. C. Carter and Perry J. Lewis, both of San Antonio, for appellees.

FLY, C. J. Appellants filed a suit against Robert E. Moss and L. R. Beck, alleging that an operation was performed by appellees on their 11 year old daughter, Imogen, for "excessive growth in and on each side of her mouth to the rear and at or near the pharynx," which is known as adenoid growth of the tonsils, that appellants had not requested said operation, and knew nothing of it until informed that their child had died on the operating table, and it was further alleged: "That no person whomsoever had any authority to permit defendants to perform any operation whatever upon their child, and plaintiff and his wife had no knowledge whatever that any such operation was contemplated by any one, especially by defendants, or would take place at any time." Negligence was also charged in the manner of the operation. The appellees answered by general and special demurrers and general denial. Judgment was for appellees.

The evidence tended to show that the operation was undertaken at the instance and request of an adult sister of the deceased child, and that she was present when chloroform was administered and the opera-

tion performed by appellees. The child never recovered consciousness after being anæsthetized. It was not alleged or proved by appellees that appellants, or either of them, had any knowledge of the operation until after the death of the child, or that they, or either of them, consented to or authorized the operation. Under that state of facts the court instructed the jury: "If you believe from the evidence that the daughter of the plaintiff took the child to Dr. Moss for the purpose of being operated upon, and you believe that the defendants in good faith performed the operation with ordinary care, your verdict must be for the defendants, and this, too, notwithstanding there was no consent from the parent that the operation should be performed."

No briefs for appellants have been filed in this court, and the judgment must be affirmed unless there is fundamental error in the charge herein copied. Under the peculiar facts of this case, in which it is not-contended that there was any great emergency, and that the life of the child was dependent upon an operation before the parents could be communicated with, if appellees were guilty of a tort in operating upon an infant without the knowledge or consent of her parents, the charge of the court went to the very foundation of the action, and deprived appellants of their right of trial by jury. That charge placed the liability of appellees on the same basis that it would have been if appellants had been present and consenting to the operation; that is, on the basis of negligence in the operation. That declaration of the law by the court struck at the very foundation of one of the issues presented by the pleadings, and in effect stated to the jury that the consent of the parents was not required if the minor was taken to the physicians by the daughter of appellants. In other words, the consent of the daughter to the operation was as effective as that of the parents, although they had never lodged any such authority in the daughter, and the operation was per-formed without their knowledge or consent. It that the law? We are of the opinion that it is not.

If the adult daughter had gone with the child to a dry goods store in the city of San Antonio and had purchased a bill of goods, no one would contend that her father would be liable for the bill, in the absence of authority from him to purchase the goods. If she had signed his name to a promissory note, he would not be liable in the absence of authority given to her to execute the note. In any kind of transaction involving property the daughter could not bind her parents, unless she acted under and by authority from them, either express or implied. The right of the child to bind the parent depends, not upon any principle peculiar to the relation of parent and child, but upon principles appertaining to the law of agency. The relationship can be used only in drawing the inference of agency upon slighter facts than as to other parties not so related. Tiffany, Per. & Dom. Rel. § 119. It follows that if the adult daughter in this instance had any authority to employ a physician to operate on her minor sister, she had that authority, not by reason of her relationship to the child or the parents, but by virtue of an agency, express or implied, from her parents, or at least one of them. Her authority must be viewed in the light of the rules and principles of the law of agency, rather than those rules connected with and arising out of domestic relations. It is not claimed that the daughter had been authorized to employ physicians, and the cause was not submitted to the jury on any such theory, but it was submitted on the broad proposition that the fact that the minor was taken to the physicians by an elder sister authorized the physicians to operate on the infant without the consent of the parents. Upon that theory, while the elder daughter could not bind her parents as to property transactions, she could bind them in matters in which the future happiness, yea the very life and limbs of their infant children, were concerned.

In the case of Bakker v. Welsh, 144 Mich. 632, 108 N. W. 94, 7 L. R. A. (N. S.) 612, 8 Ann. Cas. 195, a boy 17 years old, in company with two sisters and an aunt, consulted a physician as to a tumor on his ear. He then returned to his father's farm and afterwards went to the doctor in company with his sister, and an anæsthetic was administered, and he died before the operation was performed. His father sued for damages; one ground being want of consent of the father. A verdict was instructed for the defendant, and the Supreme Court of Michigan affirmed the judgment on the ground that "there is nothing in the record to indicate that, if the consent of the father had been asked, it would not have been freely given. There is nothing in the record to indicate to the doctors, before entering upon the operation, that the father did not approve of his son's going with his aunt and adult sisters, and consulting a physician as to his ailment and following his advice." The decision of the court is entirely unsatisfactory, and without valid reason for its rendition. The facts were such as to call for the intervention of jury, and should have been decided by the jury upon the facts. However, the facts in that case show that after consultation with the doctors the boy went back to his country home, presumably to consult with his father, and by a stretch of imagination the doctors might have concluded that the father was willing that the operation should be performed.

In the case of Mohr v. Williams, 95 Minn. 261, 104 N. W. 12, 1 L. R. A. (N. S.) 439, 111 Am. St. Rep. 462, 5 Ann. Cas. 303, a surgeon operated on the left ear of the patient, a woman, when she had requested an

operation on the right ear. She had never felt anything wrong about the left ear. The Supreme Court of Minnesota held: "As remarked in Jaggard on Torts, 437, every person has a right to complete immunity of his person from physical interference of others, except in so far as contact may be necessary under the general doctrine of privilege; and any unlawful or unauthorized touching of the person of another, except it be in the spirit of pleasantry, constitutes an assault and battery. In the case at bar, as we have already seen, the question whether defendant's act in performing the operation upon plaintiff was authorized was a question for the jury to determine. If it was unauthorized, then it was, within what we-have said, unlawful. It was a violent assault, not a mere pleasantry; and, even though no negligence is shown, it was wrongful and unlawful."

All of the cases proceed upon the theory that before an operation can be lawfully performed, it must be preceded by the consent of the person capable of consent, or of the person empowered to consent to such operation upon the person of one incapable of giving consent. In the case of Luka v. Lowrie, 171 Mich. 122, 136 N. W. 1106, 41 L. R. A. (N. S.) 290, a much later case than Bakker v. Welsh, herein cited, the Michigan court, while justifying the operation upon the ground of emergency, recognized the necessity of obtaining the consent of the parents in order to justify an operation upon an infant.

In the case of Pratt v. Davis, 224 Ill. 300, 79 N. E. 562, 7 L. R. A. (N. S.) 609, 8 Ann. Cas. 197, an epileptic married woman had an operation performed on her, at the instance of her husband, and then went home. Afterwards, in company with her brother-in-law, she returned to the sanitarium, and the doctor performed another operation · on her. She did not improve, but became insane. Suit was instituted to recover damages on the ground that the operation was performed without the consent of the woman. The evidence indicated that the woman was incapable of consenting to the operation, and that her husband did not consent, and the court affirmed a judgment for $3,000 in favor of the plaintiff.

The law, as enunciated by the few courts which have passed thereon, is not as clear and satisfactory as it should be in cases of this character, but it seems to be reasonably established that a physician is liable for operating upon a patient unless he obtains the consent of the patient, if competent, and if not, of some one, who under the circumstances would be legally authorized to give the ·requisite consent. Of course consent may be presumed from circumstances, without direct proof, but there must be consent in every case, except in an emergency when to delay to obtain consent would endanger the life or health of the patient. A child of tender years being incapable of legally consenting to the administration of an anæsthetic and a surgical operation, consent must be obtained from the person clothed with authority to consent by the law, which would be the parent or guardian, in case there be such person. Under the circumstances of this case, the sister, whether adult or otherwise, would have no more authority by virtue of such relationship than would any other person, and it was fundamental error upon the part of the court to instruct the jury that the presence of the elder sister, as a matter of law, justified the physicians in performing the operation. The parents were easily accessible by telephone or telegraph, and there was no emergency.

The question of consent of the parents was one of fact to be submitted to the jury, and the issue as to the skill and care that was exercised was one to be submitted in the alternative if consent was given. In the absence of consent to the operation the utmost skill and care in its performance would not justify the operation.

The effect of the charge was to withdraw one phase of the case entirely from the jury, and to preclude recovery except upon the basis of proof of a negligent operation. If error at all, which we think it is undoubtedly, it is a prominent error, fundamental in character, and determining a question upon which the right of the case depends. Harris v. Petty, 66 Tex. 514, 1 S. W. 525; Wilson v. Johnson, 94 Tex. 272, 60 S. W. 242; City of San Antonio v. Talerico, 98 Tex. 151, 81 S. W. 518. The error was one of law, and was fundamental in its character; and, although no brief is filed in this case by·appellants, appellees have filed a paper denominated a brief, seeking an affirmance of the judgment, which has devolved upon this court a search for fundamental error.

The judgment is reversed, and the cause remanded.

### On Motion for Rehearing.

Without attempting to enter into a discussion of what is fundamental error, we think it "clear, manifest to the understanding, plain, evident, obvious, appearing to the eye or mind," that it is error to instruct a jury that a minor child, 11 years of age, can be operated upon by a surgeon, without the consent of the parents, if the child was taken to the surgeon's office by an adult sister. The charge does not place immunity for the physician on the ground of consent of the child itself, nor on the emergency of the occasion, but merely on the proposition that "the daughter of the plaintiff took the child to Dr. Moss for the purpose of being operated upon." We hold that such an instruction is absolutely and fundamentally wrong. Such an error can be considered by an appellate court in the absence of a brief. The-

charge was assigned as error, although appellees state that this court held that it would be considered, "even though not assigned as error." The charge as given is not the law in any case, no matter what the facts might be, and this court rendered its decision on the broad proposition that the mere fact that a child of tender years is taken to a surgeon's office by an elder sister, without the consent of the parents of the child, will not justify an operation upon the child. We did not hold that the charge was erroneous, as stated by appellees, because "a minor, by reason of his minority, has no right to give his consent for needed medical attention, and that without having the consent of the parent." No such points are presented in the charge of the court.

We do not wish it understood, however, that this court has intimated an indorsement of the proposition that an infant of tender years is given by law any authority or power to judge of the necessity of having a dangerous operation performed upon its body without the consent of its parents. An operation performed upon an infant in case of an emergency, without the consent of the parents, cannot be justified on the ground of the consent of such infant, but upon the ground of the emergency. The physician in the case of an emergency, where the life of the infant is at stake, is justified in performing an operation without the consent of parent or guardian, not on the ground that the infant can contract for necessaries, but upon the ground that the emergency exists, and the question of emergency would be one of fact to be considered by a jury. If, however, it could be held that an infant could contract for a surgical operation, on the ground that it was necessary, it would always be a question of fact as to whether it was necessary, and that the parent or guardian had refused to have it done. The law does not give the girl under 15 the power to consent to the use of her person, and it would seem to be a dangerous proposition to authorize children of the age of the dead child to decide whether an operation is necessary, in defiance of the consent of its parents. As before stated, however, the question of the operation being necessary, or with the consent of the infant, was not an issue in the case. The charge exonerated the surgeon from all blame on the ground alone that the infant went to his office in the company of a sister. Upon that issue alone it must be tested.

Appellees give a synopsis of the pleadings and state: "That the general denial put in issue all of the allegations of plaintiffs' petition cannot be denied, and therefore the fact of plaintiffs giving their consent or of authorizing any one to have the operation performed was clearly put in issue." That is undoubtedly true, but the court ignored the issue and instructed the jury, as a matter of law, that if the sister took the child to the office of appellees, the verdict must be in favor of the latter "notwithstanding there was no consent from the parents that the operation could be performed." In that proposition lies the fundamental error, because it goes to the very foundation of the action. The pleadings did not justify any such charge, but it was directly in the face of the issues raised therein. The consent of no one was required by the charge, neither the parents, the child, or the nurse, and yet this court is asked to consider the pleadings, and not the evidence, and then presume that the charge is correct. It could not be under the issues made by the pleadings. When the facts are consulted the error is merely intensified. There is not one word in the charge as to the mature daughter acting as the agent of the parents, and no such issue was raised by the pleadings.

The case cited by appellees (State v. Housekeeper, 70 Md. 162, 16 Atl. 382, 2 L. R. A. 587, 14 Am. St. Rep. 340) was one in which an operation was performed upon a married woman for cancer of the breast, and the husband sued for damages because the operation for cancer was without his consent, although he had consented to an operation for tumor. He was present and assisted in preparing for the operation. The consent of the wife to the operation was deemed sufficient on the ground of pressing necessity. The court said: "Surely the law does not authorize the husband to say to his wife: 'You shall die of the cancer; you cannot be cured, and a surgical operation, affording only temporary relief, will result in useless expense.' The husband had no power to withhold from his wife the medical assistance which her case might require." A married woman's power over her person cannot be classed with that of an infant of tender years over her person; but, even in the case of a married woman, it appears from that case there must be an emergency, and a failure upon the part of the husband to respond to the call of the emergency. Under article 4624, R. S. 1911, the wife is given authority to contract for necessaries furnished herself or children, and for all expenses incurred for the benefit of her separate property. The infant has no such statutory authority.

Undoubtedly "if the evidence had shown that the daughter was intrusted with the care and custody of the child, with instructions to use her best judgment in doing what was necessary for the child's health and benefit," the charge would not have been "directly responsive to the pleadings and the evidence." It is not pleaded that the elder daughter had "the care and custody of the child, with instructions to use her best judgment in doing what was necessary for the child's health and benefit," and the cause was not submitted upon any such theory. Such allegation, if supported by evidence, might have made the sister an agent of the parents,

whose consent to the operation might have been their consent, but the question of agency of the sister and consent of the parents was brushed aside by the charge, and justification of the physicians was rested on the naked fact that the child was taken to the office by the sister. To speculate upon the theory that the charge might have been directly responsive to the evidence would be no more justifiable than to imagine that the child had no operation performed upon it at all and was still living.

Appellees object to the court stating that the operation was performed at the instance and request of the sister, and the court might, with propriety, withdraw that statement, confine itself to the pleadings, and state that the sister was merely present when the operation was performed.

It was alleged in the petition "that no person whosoever had any authority to permit defendants to perform any operation whatever upon their child, and plaintiff nor his wife had any knowledge whatever that any such operation was contemplated by any one, especially by defendants, or would take place at any time." No such issue was presented to the jury.

The motion is overruled.