BISHOP *v.* SHURLY.

1. PHYSICIANS AND SURGEONS—TRIAL—INSTRUCTIONS—ONE ALLEG-ING CAUSE OF ACTION MUST ESTABLISH FACTS IN SUPPORT THERE-OF.

In an action against a surgeon for the death of plaintiff's 19-year old son, alleged to have been caused by injecting cocaine as a local anesthetic in removing his tonsils in breach of a contract not to do so but to use ether as a general anesthetic, the trial court properly instructed the jury that plaintiff must establish by a fair preponderance of the evidence that the contract was entered into as alleged, that cocaine was used, that it was the real cause of death, and the damages to which she is entitled.

[1] Damages, 17 C. J. § 322; Physicians and Surgeons, 30 Cyc. pp. 1584, 1589.

2. SAME—BURDEN OF PROOF.

>    The burden was upon plaintiff to prove that the injection was the proximate cause of death, since if it was not the proximate cause, its use would not support plaintiff's claim for damages for such breach.

3. SAME.

>    On the claim as set forth in the declaration and the record as made, the burden was on plaintiff to prove that cocaine had been administered.

4. WITNESSES — WITNESS CALLED BY DECEASED'S REPRESENTATIVE MAY MAKE FULL EXPLANATION OF SUBJECT INQUIRED INTO ALTHOUGH EQUALLY WITHIN KNOWLEDGE OF DECEASED.

>    Where the representative of the deceased called defendant's assistant for cross-examination under the statute and thereby elicited testimony otherwise inadmissible under 3 Comp. Laws 1915, § 12553, because equally within knowledge of the deceased, the defendant was entitled to a full explanation by the witness of the subject inquired into.

5. SAME—"MATTER" AS USED IN STATUTE DEFINED.

>    The term "matter," as used in 3 Comp. Laws 1915, § 12553, means a fact or facts material to the issue being tried.

6. SAME—EVIDENCE—ADMISSIBILITY.

>    Where, in an action against a surgeon for the death of plaintiff's 19-year old son, alleged to have been caused by the injection of cocaine as a local anesthetic in breach of a contract not to do so but to use ether as a general anesthetic, plaintiff called defendant's assistant for cross-examination under the statute and elicited the fact that a local anesthetic had been used, defendant was entitled to have the witness explain that the change from a general to a local anesthetic was made at the request of decedent; the reason for the change, under the circumstances, being a "matter" affecting the issue to be decided.

7. PHYSICIANS AND SURGEONS—CONTRACTS—PRINCIPAL AND AGENT.

>    Any agreement with a patient, made by a surgeon's assistant charged with the duty of administering an anesthetic before an operation, as to the form of the anesthetic, would be binding on the surgeon.

---

[2]Physicians and Surgeons, 30 Cyc. p. 1584; [3]Id., 30 Cyc. p. 1584; [4]Witnesses, 40 Cyc. p. 2346 (Anno); [5]Id., 40 Cyc. p. 2312; [6]Id., 40 Cyc. p. 2346 (Anno); [7]Physicians and Surgeons, 30 Cyc. p. 1574 (Anno).

8. INFANTS—SURGICAL OPERATION "NECESSITY"—CONTRACTS.

Performance of a surgical operation for the removal of tonsils is within the meaning of the term "necessaries," for which infants may make binding contracts (3 Comp. Laws 1915, § 11833).

9. SAME—MOTHER'S CONTRACT FOR SURGICAL OPERATION FOR 19-YEAR OLD SON SUBJECT TO CHANGE BY HIM.

A contract made by a widowed mother, in the absence of her 19-year old son, for the removal of his tonsils, was made for him, and he could thereafter change or modify it as he saw fit.

10. PHYSICIANS AND SURGEONS—CHANGE IN CONTRACT BY INFANT AUTHORIZED TO MAKE IT NOT A BREACH.

Where a 19-year old son requested that a local anesthetic be given him, in removing his tonsils, instead of a general anesthetic as contracted for by his widowed mother, compliance with his request was not a breach of the contract which would support an action for his death by reason thereof, brought against the surgeon by her as administratrix of the son's estate.

11. EVIDENCE—CERTIFICATES OF DEATH PRIMA FACIE EVIDENCE OF CAUSE OF DEATH.

Under 2 Comp. Laws 1915, § 5607, certificates of death provided for by sections 5604, 5605, are *prima facie* evidence of the facts stated in them when the issue is the cause of death.

12. SAME—CERTIFICATE MADE BY CORONER INSTEAD OF ATTENDING PHYSICIAN INADMISSIBLE.

A death certificate, made by a coroner who was not present at the time of death, instead of by the attending physician, who was present, as required by 2 Comp. Laws 1915, § 5605, as amended by Act No. 200, Pub. Acts 1923, was properly excluded as evidence of the cause of death.

13. SAME—CAUSE OF DEATH—TESTIMONY AS TO PROBABILITY OF THYMIC DEATH ADMISSIBLE.

In an action for the death of plaintiff's decedent, alleged to have been caused by using cocaine as a local anesthetic instead of ether as a general anesthetic, testimony by physicians that death might have occurred just the same even if ether had been used if the thymus gland was still

---

[8]Infants, 31 C. J. § 176; [9]Id., 31 C. J. § 176; [10]Id., 31 C. J. § 176; [11]Evidence, 22 C. J. § 922; [12]Id., 22 C. J. § 922; [13]Id., 22 C. J. § 758.

persistent in decedent was admissible in evidence for its bearing on the cause of death, which was sudden and due to some unusual cause, although there was no evidence that said gland was persistent, due to plaintiff's refusal to permit a *post-mortem* examination, which would have disclosed the facts.

14. APPEAL AND ERROR—NEW TRIAL—WEIGHT OF EVIDENCE.
   In absence of a motion for a new trial, the Supreme Court will not consider the weight of the evidence.

Error to Wayne; Murphy (Alfred J.) J. Submitted October 5, 1926. (Docket No. 9.) Decided December 8, 1926.

Case by Ellen Bishop, administratrix of the estate of Frederick Bischoff, deceased, against Burt R. Shurly for the death of decedent, alleged to have been caused by the injection of cocaine in breach of a contract not to do so but to use ether as a general anesthetic. Judgment for defendant. Plaintiff brings error. Affirmed.

*Benjamin, Beckenstein, Wienner & Quay,* for appellant.

*Lodge & Brown,* for appellee.

SHARPE, J. On August 18, 1922, the plaintiff interviewed the defendant at his hospital in Detroit concerning the removal of the tonsils of her son Frederick, then 19 years of age. She testified:

"When Dr. Shurly came in, I told him that my son's tonsils are affected and I would like to have them removed. He said all right and now we will have to ask about the anesthetic, whether a local or a general. He said the local is cocaine and the general is ether. I told him I had been advised by the family physician, Dr. Douglas, who is now dead, never to use cocaine on myself or my family, not even for a tooth. Dr. Shurly said that he would give him ether. I asked

—————————————
[14]Appeal and Error, 3 C. J. § 906.

the doctor whether I should bring him in and have him examined today, but he said not to, but to bring him in the next morning between eight and nine and he would operate on him; also to give him a good big dose of salts, and nothing to eat in the morning."

Mrs. Martha Burns, an undergraduate nurse, was with plaintiff. She testified:

"He asked whether she wanted him to use a local or general anesthetic, cocaine or ether, and Mrs. Bischoff told him she didn't want him to use cocaine under any circumstances, that her family physician told her not to use cocaine; Dr. Shurly said he would use ether, and asked how the boy was. Mrs. Bischoff told him he was in good condition every way. He told her not to give him supper that same night and a dose of salts and no breakfast the following morning, and we followed just those instructions."

The next morning Frederick went to the hospital, accompanied by Mrs. Burns. His pulse and temperature were taken, and he was prepared for an ether anesthetic. He was then taken in the elevator to the operating room. Dr. Claude B. Gaines, an assistant to the defendant, and instructed by him to administer the anesthetic to Frederick, called by plaintiff for cross-examination under the statute, testified that he examined his pulse and heart and found them to be normal; that he prepared him for the operation "by giving him a local injection of procaine * * * in the back of the throat, where the muscular fibre comes down," consisting of "two drachms or two teaspoonfuls of the solution, the strength of which is about one-half of one per cent," by means of a needle with a curve in it, long enough to reach through the mouth to the tonsils. He further testified:

"Just as I was going to give the second injection, I discovered that the patient had collapsed, so we immediately quit and did not proceed with the second injection. The patient became limp and leaned forward."

The defendant was sent for, stimulants administered, and artificial respiration resorted to for about 40 minutes.    A pulmotor was then used.    He died about 10 minutes thereafter.    The plaintiff had been sent for, and arrived before his death.

It is her claim that the contract she made with the defendant provided that a general, and not a local, anesthetic should be used in the operation, and that it was breached by defendant, and as administratrix of her son's estate she brings this action to recover the damages the estate sustained by reason of his suffering and death.    The case was submitted to the jury, who found for the defendant.    Plaintiff reviews the judgment entered by writ of error.

1. The Contract.    The defendant testified that Frederick was with the plaintiff when she first called upon him, and that he then examined him and found a diseased condition of the tonsils, and further:

"I remember distinctly having a conversation in regard to anesthesia.    I may possibly have promised not to give this boy cocaine, and God knows I never gave him any.    I may have promised to give him ether if it were possible to do so.    *    *    *    I cannot remember that I did, but I might have promised not to have given cocaine, because we never use cocaine in the throat by injection."

Error is assigned upon the following extract from the charge:

"What then specifically is it necessary that the plaintiff prove by this preponderance of evidence, to warrant you to return a verdict in her favor?    There are four separate elements each of which it is incumbent upon the plaintiff to establish to your satisfaction by a fair preponderance of the evidence to justify you in returning a verdict in her behalf.    What are these four elements?    First, it must be established that a contract was entered into between the mother of the deceased and Dr. Shurly, by which it was agreed that a general, and not a local anesthetic was to be ad-

237—Mich.—6.

ministered, and that cocaine was not to be used.
Second, it must be established by a fair preponderance
of the evidence that cocaine was used.    Third, it must
be established that the use of cocaine upon the de-
ceased caused his death, that the administration of
cocaine was the real cause of the death.    And fourth,
the plaintiff must establish damages to which she is
entitled.

"The proof of these four separate elements is es-
sential by a fair preponderance of the evidence to war-
rant a verdict in favor of the plaintiff.    If any one
of these four elements has not been established, your
verdict should pass in favor of the defendant."

We find no error in this instruction.    The burden
was on plaintiff to satisfy the jury that her son died
from the effects of the injection.    Her counsel urge
that the contract provided for the use of the general
anesthetic, and that it was breached by the use of
the injection, but, if this injection was not the proxi-
mate cause of the death of the deceased, its use will
not support plaintiff's claim for damages for such
breach.    Plaintiff testified that when she arrived at
the hospital she asked the defendant what was the
matter with her son—

"and he said not to get nervous nor to worry, that his
assistant had given him an injection of cocaine and
he had collapsed, but his heart is strong, and the
pulmotor is working on him, and he said he was going
to save him.    I told him that I had told him before
not to give him cocaine but to give him ether, and he
said he forgot to tell his assistant not to give him
cocaine."

We are impressed that on the claim as set forth in
the declaration and the record as made the burden
was on plaintiff to prove that cocaine had been ad-
ministered.

2. Dr. Gaines' Testimony.    As before stated, Dr.
Gaines, an assistant of defendant, was called for cross-
examination by the plaintiff, and testified that he had

administered a local anesthetic (procaine) to deceased. It is plaintiff's claim that by doing so the contract was breached.   On examination by defendant's counsel, Dr. Gaines was permitted to testify, over plaintiff's objection, that as the deceased was entering the operating room a lady was passing out; that deceased asked the doctor what operation had been performed on her, and was informed that her tonsils had been removed; that he then asked what anesthetic she had taken, and, on being informed that it was a local one, asked, "Why cannot I have the same?" and, when told that he could, he inquired as to the manner in which it would be administered, which was explained to him, and that he then said he would take the local anesthetic and got into the chair used for that purpose in the operating room.

Plaintiff's counsel insist that this testimony was not admissible; that it violated section 12553, 3 Comp. Laws 1915.   This section provides that a party to a suit or proceeding prosecuted or defended by the personal representatives of a deceased person shall not be permitted to testify to matters which, if true, must have been equally within the knowledge of such deceased person, and applies a like rule to an agent in the making or continuing of a contract with any person who may have died, unless called as a witness by the legal representatives of such deceased person.

In *Fox* v. *Barrett's Estate,* 117 Mich. 162, it was said:

"If, however, the representative of the deceased wishes, he may compel the living party to testify; but in that case he cannot prevent such party from giving a full explanation of the subject inquired about."

This holding has been cited with approval in *Lange* v. *Klatt,* 135 Mich. 262; *Cady* v. *Burgess,* 144 Mich. 523; *Atkin* v. *Van Sickle,* 187 Mich. 635; *Gacesa* v. *Consumers Power Co.,* 220 Mich. 338 (24 A. L. R.

675), and must be accepted as the settled law in this State.

The term "matter," as used in the statute, means a fact or facts material to the issue being tried. The burden was on plaintiff to prove that a local anesthetic had been administered and that the deceased had passed away as a result thereof. The facts elicited by the plaintiff from Dr. Gaines, heretofore particularly stated, showed that a local anesthetic had been used, that deceased soon after collapsed, the efforts made to revive him, and his death about 50 minutes thereafter. These facts were all material to the issue. It is upon them that plaintiff bases her claim that the contract was breached by the defendant. Under the rule stated in the *Fox Case,* we feel constrained to hold that when plaintiff elicited these facts in the examination of the doctor the defendant was entitled to have him fully explain what occurred in the operating room after the deceased had been brought there, prepared for the administration of ether. That a change in the form of the anesthetic to be used was then made is apparent. Why was it made? The reason therefor, clearly, is a "matter" affecting the issue to be decided. We find no error in the ruling of the court permitting the doctor to testify relative thereto.

*Jonescu* v. *Orlich,* 208 Mich. 89, is easily distinguishable. The testimony sought to be elicited in that case was in no way related to the matter concerning which the defendant had been examined when called for cross-examination by the plaintiff.

3. Right of Deceased to Change the Contract. Dr. Gaines was the representative of the defendant, charged by him with the duty to administer the anesthetic. Any agreement made by him with the deceased relative thereto would be as binding upon the defendant as if he made it himself. The deceased was 19 years of age. His father was dead. He had

a legal right to contract with the defendant for the performance of the surgical operation. Such a service is within the meaning of the term "necessaries," for which infants may make binding contracts. 3 Comp. Laws 1915, § 11833; *In re Dzwonkiewicz's Estate,* 231 Mich. 165, 167. The contract made by the mother was made for and on behalf of her son. She brings this action, as administratrix of his estate, to recover the damages the estate sustained by reason of its breach. The contract was made by her for him, and in his absence. Had he been present at that time, he could himself have made a binding contract with the defendant. She made it for him. It seems clear that he could at any time thereafter change or modify it as he might see fit to do. He had arrived at an age at which he could nominate a guardian for his estate if it had been necessary to appoint one. 3 Comp. Laws 1915, § 13952. His father being dead, his mother was entitled to the custody of his person and to the care of his education. 3 Comp. Laws 1915, § 13955. As such natural guardian she would have no control over his estate, and, had he possessed any, it would have been necessary to have had a guardian appointed to handle it. Were this a proceeding wherein the defendant sought to enforce payment for the services rendered by him, under the claim of plaintiff that she entered into the contract "as guardian for said minor, and for and on his behalf," as set forth in the declaration, it seems clear that his estate only would be liable to pay therefor.

In *Bakker* v. *Welsh,* 144 Mich. 632 (7 L. R. A. [N. S.] 612, 8 Ann. Cas. 195), a young man 17 years of age died on the operating table after chloroform had been administered to him. His father was not present, nor had his consent to the operation been obtained. In an action by the father, as administrator of his son's estate, against the surgeon for damages, because the operation was performed without the con-

sent of the father, it was held that there could be no recovery. This holding was cited with approval in *Luka* v. *Lowrie,* 171 Mich. 122, 132 (41 L. R. A. [N. S.] 290). If the deceased could have entered into a binding contract with the defendant for the service to be rendered, it seems clear that he could modify the contract made by his mother for and on his behalf.

4. Certificate of Death. The plaintiff offered in evidence the following certificate:

"Detroit, Mich., Sept. 14, 1922.

"This is to certify that, I, James E. Burgess, M. D., one of the coroners of Wayne county, was called to Shurly hospital and there found the body of the late Frederick Bischoff.

"The cause of death was paralysis of phrenic nerve, following injection of cocaine solution for removal of tonsils.

"Inquest necessary: No.

(Sgd.)   "JAMES E. BURGESS, M. D. C. T. E.,
"Coroner."

And also a certified copy of a certificate of the death of Frederick, signed by Dr. Burgess as coroner and filed in the "Department of State Division of Vital Statistics," wherein the cause of death was stated as in the certificate copied above. It appearing from the testimony of the coroner that he was not present at the time of death, and that he based his statement entirely on what was said to him by some person in the hospital, these certificates were not admitted. Error is assigned on this ruling.

Section 5604, 2 Comp. Laws 1915, provides for the registration of deaths and the furnishing of certificates relating thereto. Section 5605, as amended by Act No. 200, Pub. Acts 1923, reads in part as follows:

"Whenever any person shall die, the undertaker, householder, relative, friend, manager of institution, sexton or other person superintending the burial of said deceased person, shall cause a certificate of death

to be filled out with all of the personal and family particulars required in section three of this act, and attested by the signature of a relative or some competent person acquainted with the facts. The physician who attended the deceased person during his last illness shall fill out the medical certificate of cause of death, which death certificate shall be delivered to the registrar within forty-eight·hours after the death shall have occurred. In case of death without the attendance of a physician, or if it shall appear probable that the deceased person came to his death by unlawful or suspicious means, then the registrar shall refer the certificate to the health officer or coroner for immediate investigation and report prior to issuing the permit." * * *

In section 5607 it is provided:

"All certificates of death, local registers or county records authorized under this act, or certified copies thereof, shall be *prima facie* evidence in all courts and for all purposes of the facts recorded therein."

Such certificates are *prima facie* evidence of the facts stated in them when the issue is the cause of death. *Bromberg* v. *Insurance Co.,* 192 Mich. 143; *Harrington* v. *Accident Ass'n,* 232 Mich. 101.

The statute, above quoted, requires "the physicians who attended the deceased person during his last illness" to fill out "the medical certificate of cause of death." At the time the certificates were offered, it appeared by plaintiff's proofs that Dr. Burgess, the coroner who signed the certificates, was not present at the time of Frederick's death. He had been notified after his death, and arrived soon thereafter. It appearing that there were attending physicians who had administered to the deceased prior to and at the time of his decease, the coroner should not have assumed to make a certificate as to the cause of death, of which he had no personal knowledge. It is only in cases provided for in the last sentence of that part of the statute quoted above that he is authorized to

so act. These certificates, not having been made in compliance with the statutory provisions, were properly excluded when offered in evidence.

5. Thymus Gland. The sudden death of the deceased was accounted for by the defendant by the presence in his person of what is known as the thymus gland. The medical testimony tends to show that this gland, located underneath the breast bone, is ever present in children, and usually atrophies and disappears during childhood, but in some individuals it persists or enlarges, and, when present in an adult, sudden death is liable to result from any slight shock, such as the prick of the needle in administering the anesthetic. The coroner urged the plaintiff to permit a *post-mortem* examination to be had, but she would not consent thereto. The doctors were in agreement that such an examination would have revealed the cause of death with reasonable certainty. The plaintiff testified that the defendant told the coroner in her presence "that his assistant had administered cocaine and the boy collapsed after." The defendant denied having made this statement.

In support of defendant's theory as to the cause of death, he was asked:

"*Q.* Taking that case as you know it, with the symptoms as you know them to have been, what you saw from your examination of the patient, let us suppose that instead of having had the local anesthetic of procaine administered, he had had the general ether anesthetic applied, what have you to say as to the probability of this thymic death having occurred in him?"

and answered:

"I believe he would have died just the same, just as four cases at the Massachusetts general hospital died the last year, from thymic death, all of whom were given ether. That hospital is the home of ether, ether was first administered there. The doctors could not determine beforehand that they had this condition,

and they gave him ether, and the patients died without any response from them whatever."

A similar question was put to Dr. Stephenson, and the answer was to the same effect.    Error is assigned on permitting these questions to be answered over plaintiff's objection, for the reason that they called "for a conclusion of fact upon presumptions not established by any competent evidence in the case."

There was proof that any sudden shock might cause death in case the thymus gland was still persistent. We think there was no error in permitting these experts to express an opinion as to whether the use of ether as an anesthetic might produce such a shock. There was, of course, no evidence that this gland was persistent in the body of the deceased, as no *post-mortem* examination was had.    The death was sudden, and due to some unusual cause.    Dr. J. B. Kennedy, a surgeon of 40 years' practice, testified that there were no symptoms attending his condition after the anesthetic was administered which "would indicate or lead me to suspect that this was a death due to the administration of cocaine."    We think the evidence was admissible in its bearing on the cause of death.

This case was tried very carefully.    The issue as to the cause of death and defendant's liability therefor was fairly submitted to the jury.    There was testimony to support the verdict rendered.    With its weight we have no concern, as there was no motion made for a new trial.    We find no reversible error.

The judgment is affirmed.

BIRD, C. J., and SNOW, STEERE, FELLOWS, WIEST, CLARK, and McDONALD, JJ., concurred.