## Zaman et al. v. Schultz

*Harry Doerr*, for plaintiffs; *J. Earl Ogle*, for defendant.

REED, P. J., O. C., specially presiding, July 18, 1933.—The plaintiffs brought an action in trespass to recover damages they say they sustained by reason of the alleged injury done to Ethel Zaman, a minor. The case came on for trial and was submitted to the jury, and a verdict was rendered in favor of Ethel Zaman in the sum of $176 and in favor of her father, Frank Zaman, in the sum, of $39.10. The defendant, not being satisfied with the result, made a motion for a new trial, assigning certain reasons therefor, and also a motion for judgment n. o. v. At the time the case was argued, counsel for defendant indicated that he would not press the motion for a new trial, but urged that the court should grant his motion for judgment n. o. v.; at that time counsel for the defendant called the court's attention to certain authorities and agreed to submit a brief within a short time. Counsel for the plaintiff also agreed to submit a brief, which has been received, but no brief has been filed by counsel for the defendant.

The facts upon which plaintiff relies for recovery in this case are, briefly, as follows: Ethel Zaman, a minor child of Frank Zaman, on or about March 25, 1932, was employed as a domestic by Herbert Pfuhl, of Johnstown, Pa., and on March 26, 1932, the said Herbert Pfuhl requested the said Ethel Zaman to go to the Memorial Hospital in the City of Johnstown, Pa., stating that his wife, who had just been confined, wished to talk to her and give her some instructions concerning her duties. On her arrival at the hospital she was met by Dr. Charles H. Schultz, the defendant, in the room occupied by Mrs. Pfuhl, and was taken into another room for the purpose of having a blood test, which was taken from her finger. Plaintiff also claimed that, after the test was made, quite a quantity of blood was taken from her arm. It was also averred that on March 29, 1932, the said Ethel Zaman was again ordered by Herbert Pfuhl to go to the hospital on the pretext that his wife wished to speak to her, and that when she went there on that occasion the said defendant, Dr. Charles H. Schultz, again took a quantity of blood from her for transfusion purposes; and she alleged that after this blood had been taken from her she was left in a weakened condition and suffered certain pain and inconvenience, so that she was unable to work, etc.

The defendant did not deny that certain quantities of blood were taken from Ethel Zaman for the purpose of tests and transfusion, but he and his witnesses

denied that there was any large quantity of blood taken from her on the first occasion and averred that there was only sufficient of her blood taken to make a proper blood test, and that after it was found that her blood could be used for the transfusion she was brought back to the hospital and a certain quantity of blood was taken from her (not nearly so large a quantity as she claimed) and that the transfusion was made. It was alleged on the part of Ethel Zaman that she did not know she was wanted on either occasion for the purpose of giving her blood for transfusion to Mrs. Pfuhl; that she had never heard of blood transfusions, and that she had not given her consent. However, the evidence seemed to be that she had not protested very strongly, if at all, against the taking of her blood. The evidence is uncontradicted that the consent of the parents was not obtained before this blood was taken from Ethel Zaman for transfusion purposes.

As far as we have been able to discover this case is without parallel. In other words, we have not found any case in the books where blood has been taken from a minor either with or without his or her consent for transfusion purposes. We do find in the books cases where operations have been performed on minors without the consent of their parents or guardians, and the authorities are not in accord as to whether or not it is necessary first to secure the consent of the parents or guardian before the operation is performed on a minor. We believe the majority of the cases hold that consent is not necessary in emergency cases; on the other hand, we believe the weight of authority is to the effect that before an operation is performed on a minor the consent of the parents or the guardian should first be obtained. In the case of Bakker v. Welsh et al., 108 N. W. 94, 144 Mich. 632, we find in the syllabus the following:

"A boy 17 years old, afflicted with a small tumor of the ear, for which he had taken treatment, went to a nearby city, accompanied by adult relatives, was examined by a surgeon, and went back home, agreeing to return later and hear the surgeon's diagnosis. On his return, accompanied at this time, also, by adult relatives, he arranged to have the tumor removed. While an anæsthetic was being administered, preparatory to this operation, the boy died. *Held*, that the surgeons performing the operation were not liable in damages to the boy's father because of the fact that he had not consented to the operation."

In the above case, at page 96, it was said by the court:

"There is nothing in the record to indicate to the doctors, before entering upon the operation, that the father did not approve of his son's going with his aunt and adult sisters, and consulting a physician as to his ailment, and following his advice. We think it would be altogether too harsh a rule to say that under the circumstances disclosed by this record, in a suit under the statute declared upon, the defendants should be held liable because they did not obtain the consent of the father to the administration of the anæsthetic."

And in the case of Bishop v. Shurly, 237 Mich. 76, 211 N. W. 75, certain facts and circumstances are recited, under which a minor had an anæsthetic administered to him for the purpose of performing an operation, and the boy died; this case was submitted to the jury as to the cause of death and the defendant's liability therefor, and the jury found in favor of the defendant. The appellate court sustained the finding of the jury.

As a general rule, a surgeon is not permitted to operate on a patient who is in possession of his faculties and who is able to consult about his condition, where no emergency exists making it impracticable to confer with him, without first obtaining his consent; and a surgeon who performs an operation without his patient's consent, expressed or implied, commits an assault for which

he is liable in damages. The patient's consent may be implied from circumstances; thus, if he voluntarily submits to an operation, his consent will be presumed, unless he was the victim of false and fraudulent misrepresentations. If the patient is for any reason not competent to consent, the consent of someone who, under the circumstances, would be legally authorized to give it may be obtained. Where an emergency arises, calling for immediate action for the preservation of the life or health of the patient, and it is impracticable to obtain his consent or the consent of anyone authorized to speak for him, it is the duty of the surgeon to perform such operation as good surgery demands, without such consent: 48 C. J. 1130, 1131. And under section 121 (b), "Necessity of Consent of Spouse or Parent", it is said: "A father's consent to the performance of an operation upon a child seventeen years of age has been held unnecessary; and it has been held that in case of an emergency a surgeon may operate on a child without waiting for authority from the parents, where it appears impracticable to get it. But in the absence of an emergency an operation performed on a child without the consent of the parents is a legal wrong; and adult sisters of the child, who are its temporary custodians, have no authority to give consent under such circumstances. Only a reasonable and diligent effort on the part of the physician to find the parents and advise them of the situation has been required."

In the instant case, there is no evidence that any effort was made on the part of the defendant to obtain the consent of the parents of Ethel Zaman before he took the blood from her body for transfusion purposes. In the case of Rishworth v. Moss et al., 191 S. W. 843 (Tex. Civ. App.), it was held:

"In an action for the death of plaintiff's minor daughter following an operation for the removal of tonsils and adenoids by surgeons to whom she had been taken by her adult sister, whom she was visiting at the time, evidence *held* not sufficient to warrant the jury in finding that the sister had either express or implied authority to give consent to the operation on behalf of the parents. . . .

"Surgeons cannot rely on the apparent authority of the sister of a child to give her parents' consent to an operation involving the use of a general anæsthetic, where there was no act on the part of the parents to lead them to believe the sister had such authority, and they did not even know that the child was lawfully intrusted to the custody of the sister, since the authority of an agent can only be established by tracing it to some word or act of the alleged principal." And in the case of Browning v. Hoffman et al., 90 W. Va. 568, 111 S. E. 492, 497, it is said: "Except in very extreme cases, a surgeon has no legal right to operate upon a patient without his consent, nor upon a child without the consent of its parent or guardian. *Rishworth* v. *Moss* [Tex. Civ. App.], 191 S. W. 843; *Mohr* v. *Williams*, [95 Minn. 261, 104 N. W. 12] 1 L. R. A. (N. S.), 439; *Rolater* v. *Strain*, [39 Okl. 572, 137 Pac. 96] 50 L. R. A. (N. S.) 880; 30 Cyc., 1577; 21 R. C. L. 392. The complaint in this action however, is not made on account of operation with or without consent, but partly on account of failure to discover necessity for it and give the parents an opportunity to decline or assent."

See also Luka v. Lowrie, 171 Mich. 122, 136 N. W. 1106; Gulf & S. I. R. Co. v. Sullivan, 119 So. 501 (Miss.); Bakker v. Welsh et al., supra; Gillette v. Tucker, 67 Ohio 106, 65 N. E. 865; 93 Am. St. Reps. 639, 657; notes in 30 Cyc. 1587.

We do not find any cases in the appellate courts of this State bearing on this subject; however, we do have the case of In re Tony Tuttendario, 21 Dist. R. 561, 563, in which Judge Sulzberger (referred to in Moschzisker's "Trial by

Jury" as a "master judge") very ably discusses the question of the right to perform an operation upon a minor without the consent of its parents, as follows:

"We have not yet adopted as a public policy the Spartan rule that children belong, not to their parents, but to the State. As the law stands, the parents forfeit their natural right of guardianship only in cases where they have shown their unfitness by reason of moral depravity. Even if the law had advanced so far as to consider defective judgment of parents in a critical case a good reason for depriving them of their guardianship, we would not be prepared to say that a clear case of defective judgment has been here made out. The science of medicine and surgery, notwithstanding its enormous advances, has not yet been able to insure an absolutely correct diagnosis in all cases, and still less an absolutely correct prognosis. There is always a residuum of the unknown, and it is this unknown residuum which scientists, by a necessary law for the development of science, disregard, but which parents, in their natural love for their children, regard with apprehension and terror. Cases are not unknown in which patients, apparently in defiance of logical reasoning, die within a few days after having been successfully operated on. Scientifically considered, such catastrophes merely establish the high average of successful operations and demonstrate the average safety of the patients who undergo them. The law of average, however, is of no benefit to the exceptional individual who succumbs. For him there is no longer a percentage of chances. His loss is total.

"It is this contingency which every adult person weighs whenever a serious operation is to be performed, and no one has ever questioned his legal right to decide the question for himself. When, however, infants are concerned, the choice must be exercised by their guardians.

.    .    .    .    .    .    .    .    .    .    .    .    .    .    .    .

"Having regard to all these considerations and to the fact that the child's present condition involves no danger to its life, and that, even if uncured, he is still capable of a reasonable amount of activity in all ordinary affairs, we do not think that this is a case in which we can displace the natural guardians on the ground of cruelty."

What we have said and the cases we have referred to and quoted all refer to operations performed or not performed on children either with or without the consent of their parents or guardians, and which were in the opinion of those who operated, or those who wished to operate, for the benefit of the children; but the instant case differs from that of the cases that we have referred to, in that this operation, if it is to be called an operation, was not for the benefit of Ethel Zaman, nor was it performed for the benefit of her parents, nor could she be called a volunteer; and, as far as the evidence adduced in the case is concerned, there was no just cause why this girl should undergo the discomfort and annoyance which followed the taking of her blood for transfusion purposes; and we do not believe that the court erred in instructing the jury that the defendant should have first obtained the consent of the parents of Ethel Zaman before taking from her body the blood required for the transfusion which was given to the wife of Herbert Pfuhl, and that the plaintiffs were entitled to recover damages, if any damages were sustained, in the event that such consent had not been first had and obtained.

It is argued on the part of counsel for defendant that this was a humane act on the part of Ethel Zaman and that she or her parents should not complain because she gave this blood to save Mrs. Pfuhl. However, the husband of Mrs. Pfuhl was present at the time; he had the appearance of being a strong, healthy, robust man, and we see no reason why he did not offer to give his blood

for this transfusion instead of having it taken from Ethel Zaman; and there was no evidence that any such offer was made on his part.

We are not unmindful as we write this opinion of the fact that perhaps many lives have been saved by reason of blood transfusions, and anything that is said in this opinion is no reflection whatever on the defendant as to his care and ability as a practicing physician, and the circumstances were such as would cause, perhaps, almost any physician to have taken from the body of the plain- tiff, Ethel Zaman, the blood required for the transfusion which was given to Mrs. Pfuhl. Nevertheless, Ethel Zaman was the innocent victim of having a considerable quantity of her blood taken from her without the consent of her parents, and she alleges that she suffered certain injuries and inconvenience as the result of the taking of this blood, and the parents claim that they suf- fered loss by reason of the injury done to their daughter; and we believe the case was for the jury to determine the amount of these damages both to Ethel, the minor, and to Frank Zaman, the father. Therefore, we believe that the rea- sons for a new trial should all be overruled and a new trial refused; and the motion for judgment n. o. v. should be denied.

*Decree*

And now, July 18, 1933, after due consideration, all the reasons for a new trial are overruled and a new trial refused, and the motion for judgment n. o. v. is denied; and the prothonotary is directed to enter judgment on the verdicts in favor of the plaintiffs.        From Henry W. Storey, Jr., Johnstown.