## BONNER v. MORAN.
### No. 7834.

United States Court of Appeals for the District of Columbia.

Argued Dec. 1, 1941.

Decided Dec. 29, 1941.

Mr. Harry H. Bettelman, of Washington, D. C., for appellant.

Mr. H. Mason Welch, of Washington, D. C., with whom Messrs. John R. Daily and J. Harry Welch, both of Washington, D. C., were on the brief, for appellee.

Before GRONER, Chief Justice, and MILLER and VINSON, Associate Justices.

GRONER, C. J.:

This is an action for damages for assault and battery. There was a verdict and judgment for the defendant (appellee). The facts are these: Appellant, a colored boy residing in Washington city, was at the time of the events about to be stated 15 years of age. His cousin, Clara Howard, who lived in North Carolina, had been so severely burned that she had become a hopeless cripple. She was brought to Washington by her aunt, who was also the aunt of appellant, and taken to the charity clinic in the Episcopal Hospital, where she was seen by appellee, a physician specializing in plastic surgery. Appellee advised that a skin graft would help her, provided the blood of the donor matched. After a number of unsuccessful efforts to match her blood, the aunt persuaded appellant, then a student in junior high school, to go with her to the hospital for the purpose of having a blood test. His blood matched, and the aunt telephoned appellee, who came to the hospital and performed the first operation on appellant's side. His mother, with whom he lived, was ill at the time and knew nothing about the arrangement. After the operation, appellant returned home and while there advised his mother that he was going back to the hospital to have his side "fixed up." Instead, he remained and in the subsequent operations a tube of flesh was cut and formed from his arm pit to his waist line, and at the

proper time one end of the tube was attached to his cousin in the effort to accomplish her relief. The result was unsatisfactory, because of improper circulation of the blood through the tube. Accordingly, the tube was severed, after appellant had lost a considerable amount of blood and himself required transfusions. The tube of flesh was later removed and appellant was released from the hospital. From beginning to end, he was there nearly two months.

There was the usual amount of contradictory evidence as to what occurred prior to the first operation and during the period when appellant was in the hospital. We notice this only for the purpose of saying that there was sufficient evidence, if believed by the jury, to show that appellant's mother never knew the nature of the operations or consented to them. At the close of all the evidence, appellant's counsel asked the court to instruct the jury that before appellee could have the right to perform the operation, he must first have obtained the consent of appellant and of appellant's parents. The court declined so to instruct, but on the contrary told the jury that if they believed that appellant himself was capable of appreciating and did appreciate the nature and consequences of the operation and actually consented, or by his conduct impliedly consented, their verdict must be for the defendant. The decisive question on the appeal is the correctness of this charge to the jury.

■ In the great majority of the states, this question seems never to have arisen, nor are there any federal cases on the subject. However, the general rule is that the consent of the parent is necessary for an operation on a child. Zoski v. Gaines, 271 Mich. 1, 260 N.W. 99; Moss v. Rishworth, Tex.Com.App., 222 S.W. 225; Rogers v. Sells, 178 Okl. 103, 61 P.2d 1018; Browning v. Hoffman, 90 W.Va. 568, 111 S.E. 492; Commonwealth v. Nickerson, 5 Allen, Mass., 518; Franklyn v. Peabody, 249 Mich. 363, 228 N.W. 681.

■ We think there can be no doubt that a surgical operation is a technical battery, regardless of its results, and is excusable only when there is express or implied consent by the patient; or, stated somewhat differently, the surgeon is liable in damages if the operation is unauthorized. Schloendorff v. Society of New York Hospital, 211 N.Y. 125, 105 N.E. 92, 52 L.R.A., N.S., 505, Ann.Cas.1915C, 581; Pratt v. Davis, 224 Ill. 300, 79 N.E. 562, 7 L.R.A., N.S., 609, 8 Ann.Cas. 197; Mohr v. Williams, 95 Minn. 261, 104 N.W. 12, 1 L.R.A., N.S., 439, 111 Am.St.Rep. 462, 5 Ann.Cas. 303. Here, as we have already seen, the question is whether the consent of a boy 15 years of age dispenses with the necessity of consent by his parents. The trial court decided that it did. In this the court followed Section 59 of the Law Institute Restatement of the Law of Torts. There it is stated that, if the child is capable of appreciating the nature, extent, and consequences of the invasion, his assent prevents the invasion from creating liability, even though the assent of the parent is expressly refused. The Institute rule is bottomed on the principle that the very nature of rights of personality is freedom to dispose of one's own person as one pleases. But even if this conclusion be granted, it overlooks the infancy exception to such a rule. In deference to common experience, there is general recognition of the fact that many persons by reason of their youth are incapable of intelligent decision, as the result of which public policy demands legal protection of their personal as well as their property rights. The universal law, therefore, is that a minor cannot be held liable on his personal contracts or contracts for the disposition of his property. So also in the case of female infants the age of consent has been raised in many states from 12 years to 18 years. Likewise in most states the legal age for marriage, both of males and females, has been greatly increased over the common law standard and, where either party is under 21 years of age, the consent of parents is required. Hence it is not at all surprising that, generally speaking, the rule has been considered to be that a surgeon has no legal right to operate upon a child without the consent of his parents or guardian.

■ There are, of course, exceptions to the rule. One of them is in cases of emergency, when obviously an operation is necessary, Luka v. Lowrie, 171 Mich. 122, 136 N.W. 1106, 41 L.R.A., N.S., 290; Sullivan v. Montgomery, 155 Misc. 448, 279 N.Y.S. 575; see Annotations in 26 A.L.R. 1036, 53 A.L.R. 1056; others perhaps in cases in which the child has been emancipated, or where the parents are so remote as to make impracticable the obtaining of their consent in time to accomplish proper results. And where the child is close to maturity, it has been held that the surgeon may be justified

in accepting his consent. Bakker v. Welsh, 144 Mich. 632, 108 N.W. 94, 7 L.R.A., N.S., 612, 8 Ann.Cas. 195; see, also, Bishop v. Shurly, 237 Mich. 76, 211 N.W. 75. But in all such cases the basic consideration is whether the proposed operation is for the benefit of the child and is done with a purpose of saving his life or limb. The circumstances in the instant case are wholly without the compass of any of these exceptions. Here the operation was entirely for the benefit of another and involved sacrifice on the part of the infant of fully two months of schooling, in addition to serious physical pain and possible results affecting his future life. This immature colored boy was subjected several times to treatment involving anesthesia, blood letting, and the removal of skin from his body, with at least some permanent marks of disfigurement.

The leading case for appellee and the one on which he largely relies, in addition to the rule adopted in the Restatement, is Bakker v. Welsh, 144 Mich. 632, 108 N.W. 94, 7 L.R.A., N.S., 612, 8 Ann.Cas. 195. But there the infant was 17 years old and was accompanied to the surgeon's office by his aunt and two sisters, all adults. Also, it did not appear that the father would have refused his consent. After the first interview with the surgeon, the boy went home to his father, and returned later with his aunt to receive the report of the expert, who was to make a microscopic examination. On his return a surgical operation, not considered serious, was begun, but the youth died from the administration of the anesthetic. The Michigan court thought that in the circumstances it would be harsh to rule that the father's consent was necessary and held by implication at least that the surgeon had a right to assume that it had been given. In deciding a similar question some 20 years later the same court, in the case of a boy nine and a half years old who had been sent to the surgeon by the city physician with a request to remove the boy's tonsils and adenoids, distinctly refused to apply the principles of the Bakker case. Zoski v. Gaines, 271 Mich. 1, 260 N.W. 99. The court distinguished the Bakker case on the theory that there the operation was justified by the age of the child, the presence of adult relatives, and the absence of any indication that the parents would have refused consent.

As we have already indicated, the question here is different from that in any of the cases to which our attention has been drawn, for here we have a case of a surgical operation not for the benefit of the person operated on but for another, and also so involved in its technique as to require a mature mind to understand precisely what the donor was offering to give. We are constrained, therefore, to feel that the court below should, in the circumstances we have outlined, have instructed that the consent of the parent was necessary. Undoubtedly, the case from the doctor's standpoint is a hard one. At all times he was rendering, without compensation, his skill and professional services to alleviate pain and suffering. Doubtless this fact weighed with the jury, who regarded his activities in the matter as impelled wholly by humane and charitable motives. But by his own testimony it clearly appears that he failed to explain, even to the infant, the nature or extent of the proposed first operation. As to those which followed, he claims, and we assume correctly, that the matter was fully explained. And there is evidence that during the ensuing progress of the experiment the mother, too, was apprised of her son's heroism and gloried in the newspaper notoriety which followed, and which, as nearly as we can gather, resulted in public contributions of money for the boy's future education. Whether this attitude of the mother was a sufficient ratification, we have no need to decide, since that question is not now in the case. However, if on a new trial the evidence in this respect is substantially the same, the question whether there was consent by ratification should be submitted to the jury under appropriate instructions. And if, after the mother learned of the preliminary operation, she made no objection thereto but publicly expressed her pride in her son's courage and without remonstrance allowed him to return for the completion of the experiment, such action on her part would be tantamount to consent by implication; and that, in the circumstances, would be sufficient.

On the whole case, we are of opinion that there was error in giving the instruction objected to, and in refusing to instruct that the consent of the parent was necessary.

Reversed and remanded for a new trial.