## TRAVELERS INSURANCE COMPANY *v.* WYNESS.

1. Where the vital question involved in the trial of an action for a death loss upon a policy of accident insurance was whether or not the slayer intended to kill the decedent, it was not erroneous to refuse to charge that a presumption of an intention to kill on the part of the slayer arose from mere proof that the homicide was committed with a weapon likely to produce death. Such a charge would, if given, have lacked an essential qualification, viz.: that the proof must further show that the weapon was used in a manner calculated to cause death.

2. Where the policy in question on such a trial covered death resulting from bodily injuries effected through external, violent, and accidental means, and did not cover death resulting from any other cause, but provided that, "unless affirmative proof of death, . . and of [its] being the proximate result of external, violent, and accidental means," should be furnished the insurance company within a specified time after such accident, "all claims based thereon" should be "forfeited to the company," it was not error to charge the jury as follows: "The plaintiff must prove, her case; that is, she must prove the contract upon which she sues; prove the death of the person who took out the policy, and see that she makes proof of the death according to the requirements of the policy. When that is done, then the burden is upon the defendant to show that the death, or injury the result of which caused the death, for which the suit is now pending, did not come under the rule of the policy, but fell under some of the exceptions that are excluded by the policy; in other words, causes that the policy did not or does not cover."

3. Nor was it error, in such a case, to charge the jury, "If you find from the evidence that [K.] inflicted the injury from the results of which [the insured] died, and that the injury so inflicted was unexpectedly inflicted and without any cause or provocation whatever so far as [the insured] was concerned, then you ought to find in favor of the plaintiff for the amount sued for, unless it further appears from the evidence that [K.] intentionally inflicted such injury, the burden being upon the defendant to satisfy the jury by a preponderance of the evidence that such intent existed on the part of [K.]"

4. There being evidence in the case which, if credited by the jury, was sufficient to authorize the verdict which they rendered, this court will not disturb their finding upon the ground that the verdict is contrary to the evidence.

Argued February 9, — Decided August 2, 1899.

Action on insurance policy. Before Judge Norwood. City court of Savannah. August 1, 1898.

John W. Wyness held a policy in the defendant company, insuring him against "bodily injuries effected . . through external, violent, and accidental means," payable to his wife in case of his death resulting from such injuries alone. The policy stipulated that it did not cover "intentional injuries inflicted by the insured or any other person," etc. After the death of Wyness his wife brought suit upon the policy; and the defense was, that he came to his death as the result of intentional injury or injuries inflicted upon him by Patrick Kearney, by shooting him with a pistol. The testimony shows, that Wyness and Joe Counihan were in a barroom, engaged in a discussion touching their relative physical prowess. Counihan was partially intoxicated. Wyness seemed to be sober, though he had drunk some beer. Kearney and Smith, who were policemen of Savannah, but off duty at the time, came into the room, and Kearney (who had been drinking) asked what the matter was. Counihan answered, "Jack is trying to give me the worst of it." Kearney said, "Jack, you can't give Joe the worst of it," at the same time drawing a revolver from his pocket. According to some testimony, he pointed the pistol at Wyness; other testimony is, that he pointed it toward the ceiling; and he himself testified that he held it in his left hand, with the muzzle pointing toward the ceiling, and that he pulled it from his pocket in order to get his handkerchief, which was in the bottom of the same pocket. Wyness laughed, and said that nobody was trying to give Joe the worst of it, that he would lose an arm before he would be guilty of hitting Joe. There was testimony that Kearney flourished the pistol, and that Wyness exclaimed, "Put up that damned thing; it is liable to go off," and grabbed it. Kearney attempted to retain his hold upon it, and a scuffle for its possession ensued, during

which a bystander ran up and seized Kearney's arm. Just then the pistol was discharged once, and it fell to the sidewalk, the parties having moved through the door of the room to the street. One witness testified that Kearney "backed" Wyness through the door. The ball entered the left arm about four. inches from the top of the shoulder, and passed under the arm without coming out of the flesh, and thence through both lungs. Wyness walked from seventy-five to a hundred yards, and fell upon the street. There was no cause for any ill feeling between him and Kearney; they were friends, and had no quarrel. Kearney denied ever having any intention of shooting Wyness, and claimed that the pistol went off accidentally. On this question of intention the circumstances in testimony make a case of conflicting evidence which would support a finding for either side. After verdict for the plaintiff, a motion for new trial was overruled, and defendant excepted. The material grounds of the motion appear in the opinion.

*Barrow & Osborne,* for plaintiff in error.
*R. R. Richards* and *Mercer & Mercer,* contra.

FISH, J.   1. It is alleged in the motion for a new trial that the court erred in refusing to charge the jury, at the request of counsel for the defendant, as follows: "While it is true that the jury will not presume, from the mere fact of death, that the insured was murdered, yet the use of a weapon likely to produce death raises the presumption that he who uses such weapon upon another intends to kill. The law raises this presumption from the use of a weapon likely to produce death." We do not think that the court erred in refusing to give this request in charge. Where one deliberately or intentionally uses upon another a deadly weapon in a manner calculated to produce death, and death actually results in consequence of such use of the weapon, the presumption arises that the user of the weapon intended to kill. This is no more than saying that a man is presumed to intend the natural and ordinary consequences of his acts. But if a deadly weapon is used in a manner which, ordinarily, is not calculated to produce death, though in the given instance death in fact results, no presump-

tion arises, from such use of the weapon, that the person using it intended to kill; or if the circumstances attending the use of the weapon show that the use was not intentional, but acci-- dental, proof of the use of the weapon under such circumstances, and of the death resulting therefrom, would not raise a presumption that he who used it intended to kill. The plaintiff alleged that the insured was killed by a shot accidentally discharged from a pistol in the hands of one Kearney, and introduced evidence which, if credited, strongly tended to support this theory of the case. The charge requested entirely ignored this theory of the plaintiff, and sought to raise the presumption of an intention to kill on Kearney's part from the mere use of the deadly weapon, regardless of the manner in which, or the circumstances under which, it was used. This charge if given without qualification, as requested, would have been unfair to the plaintiff, and the court properly refused to give it.

2. It is also alleged in the motion that the court erred in charging the jury as follows: "The plaintiff must prove her case; that is, she must prove the contract upon which she sues; prove the death of the person who took out the policy, and see that she makes proof of the death according to the requirements of the policy. When that is done, then the burden is upon the defendant to show that the death, or injury the result of which caused the death, for which the suit is now pending, did not come under the rule of the policy, but fell under some of the exceptions that are excluded by the policy; in other words, causes that the policy did not or does not cover." The assignment of error on this charge is, that by this language "the court limited the duty of the plaintiff in proving her case to three things, proof of the contract; death of the insured; and that the death occurred 'according to the requirements of the policy';" whereas "the court should have told the jury that the burden of proof was upon the plaintiff to show from all the evidence that the death of the insured was caused by external violence, and accidental means." Suppose the court did limit the duty of the plaintiff to proof of the contract, the death of the insured, and that his death "occurred according to the requirements of the policy," was

this erroneous? The requirements of the policy in reference to the death of the insured are clear and unmistakable. In simple and express terms, the policy covered death resulting from bodily injuries effected through external, violent, and accidental means, and covered death resulting from no other cause. The contract also expressly provided that, "unless affirmative proof of death, loss of limb or sight, or duration of disability, and of their being the proximate result of external, violent, and accidental means," should be furnished the company "within thirteen months from the time of such accident, all claims based thereon" should be "forfeited to the company." So the plaintiff could not prove both the death of the insured, and that his death "occurred according to the requirements of the policy," without proving that the death resulted from bodily injuries effected through external, violent, and accidental means. It is contended that the language, "according to the requirements of the policy," did not indicate to the jury anything more than that the terms of the policy, as to time and place and payment of premiums and other like formal requirements of the policy, such as notice of death, and proof of death, and the like, had been complied with. We do not, as already indicated, think that this is a sound criticism of the language employed by the court. The mind of the jury was directed by the court to the proof which the plaintiff must submit to them in reference to the death of the insured, the language being, "see that she makes proof of the death according to the requirements of the policy." It does not seem at all probable that the jury could have understood "proof of the death according to the requirements of the policy" to mean proof as to the payment of premiums, or proof that the plaintiff had given due notice of the death to the insurance company. Both parties to the cause, the plaintiff in her petition and the defendant in its plea, alleged that the death of Wyness, the insured, was caused by a wound made by a shot fired from a pistol in the hands of one Kearney. So that the question whether the death was the result of injuries effected by external and violent means was really not in issue; it was admitted. The issues in the case were reduced to two

questions: first, whether the death of the insured was, within the meaning of the policy, the result of an accident; second, if it was, whether Kearney intended to kill-him when he fired the fatal shot. Even if the instructions contained in the extract from the charge which we are now considering were not sufficiently explicit upon the first of these questions, in view of the further instructions to the jury, which will next be considered, we do not see how the defendant could have been hurt.

3. Another ground of the motion for a new trial was, that the court erred in charging the jury: "If you find from the evidence that Kearney inflicted the injury from the results of which Wyness died, and that the injury so inflicted was unexpectedly inflicted and without any cause or provocation so far as Wyness was concerned, then you ought to find in favor of the plaintiff for the amount sued for, unless it further appears from the evidence that Kearney intentionally inflicted such injury, the burden being upon the defendant to satisfy the jury by a preponderance of the evidence that such intent existed on the part of Kearney." It is insisted that this was error because "it was the duty of the plaintiff to show that it was an accidental killing," which "was necessary to make out a prima facie case," and the court should have so charged the jury. Undoubtedly it was incumbent upon the plaintiff to show that it was, relatively to the insured, an accidental killing, and such we understand to be the effect of the language of the court just above quoted. The instruction that the court gave was equivalent to telling the jury that unless they found that the injury inflicted upon Wyness by Kearney was, relatively to Wyness, unexpectedly inflicted and without fault on his part, the plaintiff could not recover. It is well settled by the great weight of authority that where one person injures another, and the injury is not the result of misconduct or participation of the injured party, but is unforeseen by him, it is, as to him, accidental, although it may be inflicted intentionally by the other party. *Gresham* v. *Equitable Acc. Ins. Co.*, 87 *Ga.* 498; 1 Am. & Eng. Enc. L. (2d ed.) 294; 2 Biddle on Ins. § 829; Niblack, Acc. Ins. & Ben. Soc. §§ 376, 377; Hutchcraft *v.* Travelers Ins. Co., 87 Ky. 300; Phelan *v.* Travelers Ins. Co., 38 Mo. App.

640; Richards *v.* Travelers Ins. Co., 89 Cal. 170; Ripley *v.* Railway Pass. Assur. Co., 2 Bigelow, Ins. Cas. 738; Robinson *v.* U. S. Mut. Acc. Asso., 68 Fed. Rep. 825; Travelers Ins. Co. *v.* McConkey, 127 U. S. 661; Ins. Co. *v.* Bennett, 90 Tenn. 256; Jones *v.* U. S. Mut. Acc. Asso. (Iowa), 61 N.W. Rep. 485. Therefore the charge of the court was, in effect, that if the jury found from the evidence that the death of Wyness was accidental, within the legal meaning of the policy, they ought to find for the plaintiff, unless it further appeared from the evidence that Kearney intentionally inflicted the injury from which Wyness died. If the plaintiff showed that Wyness was killed by Kearney, and the homicide, relatively to Wyness, was an accident, and it did not further appear from the plaintiff's evidence that Kearney intended to kill him, then the burden was upon the defendant to allege and prove the facts necessary to bring the case within the exception limiting its liability; that is, it was incumbent upon the insurance company to show that Kearney intended to kill Wyness. 1 Am. & Eng. Enc. L. (2d ed.) 332, and cases cited; Niblack, Acc. Ins. & Ben. Soc. § 388. The insurance company insured Wyness generally against death resulting from injuries effected through external, violent, and accidental means, and in a proviso to the policy stipulated, among other exceptions, that the policy should not cover death resulting from "intentional injuries inflicted by the insured or any other person." This identical exception was considered by the court in Coburn *v.* Travelers Ins. Co., 145 Mass. 226, and it was there held that it was erroneous to place the burden of negativing it upon the plaintiff. The court said: "Stipulations added to the principal contract, which are intended to avoid the defendant's promise by way of defeasance or excuse, must be pleaded in defense and must be sustained by evidence." This is sound law.

4. There being evidence in the case which, if credited by the jury, was sufficient to authorize the verdict which they rendered, this court will not disturb their finding upon the ground that the verdict is contrary to the evidence.

*Judgment affirmed. All the Justices concurring.*