6576, 6577.  HODNETT, executrix, *v.* ÆTNA LIFE INSURANCE CO.; and *vice versa.*

There being no conflict in the evidence as to the physical facts connected with the death of the insured, and these facts, with all reasonable deductions and inferences therefrom, overcoming the presumption of law that he did not kill himself, or that his death was accidental, and demanding a finding that he came to his death by his own hand and intentionally, and the life-insurance contracts sued upon containing the special provision that they should be void in the event of the death of the insured by his own intentional act, sane or insane, within one

year from the date of their issue, and it affirmatively appearing that these contracts were issued within one year of his death, the trial judge did not err in directing a verdict for the defendant company.

DECIDED JANUARY 27, 1916.

Action on insurance policy; from city court of Atlanta—Judge H. M. Reid. March 29, 1915.

*Simmons & Simmons,* for plaintiff.

*Smith, Hammond & Smith,* for defendant.

BROYLES, J. The deceased was found, clothed only in a nightgown, on February 17, 1913, between the hours of 4:30 and 5 a. m., in his front hall, dying from a bullet wound. He was breathing but unconscious, and was bleeding profusely from the mouth and nose, and also from the top of the head. He was lying stretched upon the floor, and a pistol was found about five or six feet from his body. One chamber of this pistol had been discharged, and a lead bullet, half flattened, was found on the floor near the body. The only wound upon his body, except a slight powder burn on one of his hands, was through the roof of his mouth. The hole, the point of entrance, as testified to by all the experts examined, was inside the mouth, and was large enough to insert therein a man's index-finger, which the expert witnesses declared showed that the wound must have been inflicted at very close range. There were no powder marks or wounds of any kind upon his lips or teeth. There was a hole in the top of his head, just to the left of the center of the top, about where the hair and the forehead met. All of the expert witnesses testified that the bullet must have entered the roof of the mouth and traveled in an almost perpendicular direction, coming out at the top of the head at the point just mentioned. The first outsider, a next-door neighbor, to reach the scene of the homicide arrived a minute or two after the shot had been fired, having been called by the wife of the deceased, and, when he entered the room where the deceased was lying, the only other persons there were the wife and little daughter of the deceased, who were dressed in nightgowns or kimonas. It was undisputed that the only persons in the house beside the deceased were his wife and their little daughter, and possibly, somewhere on the premises, a negro-woman cook, and that the death of the deceased was caused by this gun-shot-wound which was inflicted with a pistol or revolver. Upon the trial of the case the wife of the deceased, who was the plaintiff therein, did not testify

at all. In our judgment the evidence, especially as to the physical facts surrounding the death of the deceased, was sufficient to overcome the presumption of law that the deceased did not kill himself, or that, if he did, it was not intentional, but accidental, and to demand a finding that he came to his death by his own intentional act.

*Judgment on the main bill of exceptions affirmed; cross-bill dismissed.*