22305. BELCH v. GULF LIFE INSURANCE COMPANY.

Argued March 9, 1964—Decided April 9, 1964—Rehearing denied April 21, 1964.

824

*Jack J. Helms,* for plaintiff in error.

*Larry E. Pedrick,* contra.

MOBLEY, Justice. ■ In the opinion we entertain of this case, it is not necessary to determine whether the note found on the seat of the car was erroneously admitted into evidence, as contended by the plaintiff in his cross bill, because we are of the opinion that even with the note in evidence, the evidence did not demand a finding that the deceased committed suicide and that the Court of Appeals was in error in holding that the trial court erred in overruling the motion of the insurance company for a judgment n.o.v.

*Code Ann.* § 110-104 provides that "Where there is no conflict in the evidence, and that introduced with all reasonable deductions or inferences therefrom, shall demand a particular verdict, the court may direct the jury to find for the party entitled thereto." There was sufficient conflict in the evidence so that a particular verdict was not demanded.

When the death of George Belch from external and violent means was established, there was a "presumption against suicide which the law recognizes as arising out of the instincts of nature, one of which is the love of life." *Travelers Ins. Co. v. Sheppard,* 85 Ga. 751, 802 (12 SE 18) ; *Standard Accident Ins. Co. v. Kiker,* 45 Ga. App. 706 (165 SE 850) ; *Templeton v. Kennesaw Life &c. Ins. Co.,* 216 Ga. 770, 773 (119 SE2d 549). In *Templeton* the deceased met his death by external and violent means from a shotgun wound in his chest, and the question was whether his death resulted from accident or from suicide. This court in a full bench decision said in regard to the presumption against suicide, "In a case such as we are dealing with here, the only place the presumption vanishes is in the jury room, and the time it vanishes is when the jury, in consideration of all the facts and circumstances, determines that the preponderance of the evidence is against the theory of accident; and where that decision is arrived at, the presumption against suicide, like all other circumstances and inferences in favor of accident vanishes." In a proper case where there is no conflict in the evidence, as where there were actual witnesses to a suicidal act, we shall assume without deciding that the granting of a directed verdict or judgment n.o.v. would be justified in spite of the existence of a presumption against suicide. However, in the absence of facts giving rise to such a clear cut case, we must adhere to the reasoning of this court in *Templeton v. Kennesaw Life &c. Ins. Co.,* 216 Ga. 770, supra, that the presumption against suicide vanishes only in the jury room. This court in that case referred to *Code* § 38-113, providing that presumptions of fact "are exclusively questions for the jury, to be decided by the ordinary test of human experience." This court also said, "Courts should be careful, in the absence of direct mandate of law, to take away from juries questions that time and experience have proven should be left exclusively for determination by the jury." This same reasoning is applicable to the instant case where the deceased met his death by external and violent means from a pistol wound in the chest, and the presumption against suicide along with the other facts are to be left to the jury in deciding whether the presumption against suicide is rebutted. But the question now arises whether the instant case, with this presumption against suicide,

is nevertheless a case where the evidence is without conflict so that the Court of Appeals was correct in holding that the evidence demanded a finding of suicide.

The Court of Appeals held that the evidence demanded a finding of suicide because it demanded a finding that George Belch was the author of the note found on the seat of the car where he had shot himself, and that fact, together with the contents of the note—mention of debts, the "God bless you all," and the request that no one sit up with the body at the funeral home, show intention, and that, plus his despondency, exclude every other reasonable hypothesis save suicide. With that conclusion we do not agree, because there also was evidence that the deceased was not despondent on the day he died. There was no evidence that the deceased actually had written the note, and none of his relatives who had seen the note testified that it was in the handwriting of the deceased. The only testimony concerning who had written the note was given by the sheriff who testified that he did not know who wrote the note, that he would not swear it was in the handwriting of the deceased, and that there was no evidence to show when or by whom the note was written. Assuming, without deciding, that the circumstances here were sufficient to establish the authenticity of the note, there still remains a question as to when the deceased wrote the note. The deceased's business had been padlocked two days prior to his death, and he could have written the note at that time; however, the evidence clearly showed that his business was re-opened on the day of his death. It appears perfectly feasible that, if he had ever intended suicide, he may have abandoned such intention by the day he was killed, because his business was re-opened at that time. The note alone certainly did not demand a finding that the insured committed suicide. In evidence it was entitled to just such weight as the jury saw fit to give it. It was for the jury to determine whether the note, considered in connection with all the evidence, was sufficient to overcome the presumption of accident and whether the insured killed himself intentionally or accidentally.

When the deceased borrowed the 22 pistol, he rejected the offer of a 38 pistol. Upon leaving he told the lender of the pistol that he would see him tomorrow. One intending suicide

might prefer a higher caliber weapon to more fully insure that his purpose would be accomplished, and a statement of intent to see one tomorrow, though possibly a cliche expression, could indicate intent not to kill oneself today. It is a question of fact as to what the deceased's intention was.

There was also evidence that the deceased was always "cutting up." He could have been cutting up when he fired one shot out of his car window, and then accidentally shot himself upon bringing the gun back inside the car.

Further, there is strong conflict in the evidence due to the fact that only 45 minutes before he was shot, the deceased used a friend's telephone and made an appointment with someone in Waycross for the next morning. This appears contrary to what a man contemplating suicide would do.

The evidence showed that the bullet entered the chest of the deceased and did not come close to his heart. The fact that the bullet was not aimed at the deceased's head or at his heart could indicate that it was discharged accidentally instead of intentionally. It could be supposed that one with the intention of killing himself might shoot himself in a more fatal spot in order to achieve his intention; however, this is just another consideration for the jury in making a determination of a question of fact.

It is possible to conclude from the evidence that the deceased committed suicide; however, there is enough contrary evidence to support a finding that he did not commit suicide. "It is erroneous for the court to direct a verdict in favor of a particular party or parties to the cause unless there is no issue of fact, or unless the proved facts, viewed from every possible legal point, would sustain no other finding than the one so directed." *Horn v. Preston,* 217 Ga. 165 (1) (121 SE2d 775).

The presumption against suicide is evidence going to support a verdict of accident, and it was a jury question as to whether or not the presumption was overcome by the evidence to the contrary. *Childs v. Shepard,* 213 Ga. 381 (2) (99 SE2d 129). The presumption was not the sole evidence to support a finding of accidental death because there was other evidence that the deceased did not intend suicide.

"Where the fact of death is established, and the evidence points equally or indifferently to accident or suicide as the cause

of it, the theory of accident rather than of suicide is to be adopted." *Travelers Ins. Co. v. Sheppard,* 85 Ga. 751, 802, supra. Whether the evidence in the instant case pointed equally or indifferently to the theory of accident or suicide was a question for the jury. *Metropolitan Cas. Ins. Co. v. McAuley,* 134 Ga. 165 (4) (67 SE 393). "The jury should be left free to determine under proper instructions as to the law, all questions and presumptions of fact." *Templeton v. Kennesaw Life &c. Ins. Co.,* 216 Ga. 770, supra; *Standard Cotton Mills v. Cheatham,* 125 Ga. 649 (6) (54 SE 650).

The evidence in the instant case clearly could support a verdict that the deceased died by accident; therefore, a jury question was presented, and the Court of Appeals erred in directing that judgment n.o.v. be entered.

2. We are of the opinion that the evidence did not authorize a finding by the jury that the insurance company acted in bad faith in refusing to settle the claim for the added $1,000 provided under the policy for accidental death, and that the judgment of the Court of Appeals holding that the finding for attorney's fees and penalty was unauthorized was correct. Refusal to pay in bad faith under the terms of *Code Ann.* § 56-1206 means a frivolous and unfounded denial of liability. "If there is any reasonable ground for the insurer to contest the claim, there is no bad faith," and it is error to award penalty and attorney's fees. *Dependable Ins. Co. v. Gibbs,* 218 Ga. 305, 316 (8) (127 SE2d 454), and cases cited. In this case, where the evidence would have supported a finding of suicide by the jury, a finding of bad faith on the part of the insurance company in refusing to pay the claim could not be sustained.

*Judgment reversed. All the Justices concur.*