## 40895. LIBERTY NATIONAL LIFE INSURANCE COMPANY v. POWER.

Decided March 11, 1965—Rehearing denied April 1, 1965.

460

462

*Smith, Ringel, Martin, Ansley & Carr, H. A. Stephens, Jr.,* for plaintiff in error.

*Robert Carpenter, Ferrin Y. Mathews, A. Tate Conyers,* contra.

BELL, Presiding Judge. ■ The exception to the judgment of the trial court denying the defendant's motion for judgment notwithstanding the verdict raises the question as to whether the evidence demanded a verdict for the defendant. If the evidence demanded a finding that the cause of the death of the deceased insured was suicide, the clear exclusionary provisions

of the policy would require a verdict for the defendant. Thus, the issue before us on the motion for judgment n.o.v. is whether the evidence demanded a finding of death by suicide.

From the plethora of cases decided by our appellate courts on the issue of suicide, the following rules of law have emerged:

(1) All that is required to raise the presumption against suicide is to show the fact of death of a human being. The presumption is not created by proof of other facts but arises automatically and immediately upon the demise of a person. The law recognizes the presumption against suicide "as arising out of the instincts of nature, one of which is the love of life." *Travelers Ins. Co. v. Sheppard*, 85 Ga. 751, 802 (12 SE 18).

(2) The presumption should not be confused with the proof of the *means* producing death such as proof that death occurred by "violent," "external," or "accidental" means or elements of that nature. While proof of the *means* producing death is usually necessary in order to bring the death within the coverage of the contractual term of an insurance policy, *Travelers Ins. Co. v. Wyness*, 107 Ga. 584, 587 (2) (34 SE 113), proof of the means is not necessary in order *to create* the presumption. See (1) above.

(3) The presumption is a presumption of fact. It is not a presumption of law. *Templeton v. Kennesaw Life &c. Ins. Co.*, 216 Ga. 770, 773 (119 SE2d 549).

(4) As a presumption of fact, the presumption is subject to total elimination by uncontradicted evidence, either direct or circumstantial, that the death was caused by suicide. In that status a verdict is demanded that death occurred by suicide. On proper motion, a verdict should be directed accordingly. *Gem City Life Ins. Co. v. Stripling*, 176 Ga. 288 (168 SE 20); *Hodnett v. Aetna Life Ins. Co.*, 17 Ga. App. 538 (87 SE 813). Although the *Gem City* opinion written by Justice R. C. Bell was not accorded a full bench concurrence and thus is not binding on the Supreme Court, it is nevertheless binding on the Court of Appeals and all other inferior tribunals. Furthermore, the opinion delivered in the year 1932 stands to this date unrefuted and unoverruled.

(5) Where there is direct or circumstantial evidence, either or

both on each side in any combination, showing or tending to show respectively that death was or was not produced by suicide, *the presumption against suicide is not eliminated* and a jury question is presented. *Belch v. Gulf Life Ins. Co.*, 219 Ga. 823, 826 (136 SE2d 351). All civil cases can be solved by circumstantial as well as by direct evidence. A preponderance of evidence is all that is required. It makes no difference whether the preponderance is the result of one or the other kind of evidence, a union of both, or one opposed to the other. Where the preponderance lies is a jury question and their determination of that question is decisive of the case. *Travelers Ins. Co. v. Sheppard*, 85 Ga. 751, 803, supra. *But even so,* since the conflicting evidence as to the cause of death leaves the presumption against suicide extant, the jury, if in doubt as to where the preponderance lies, could give to the presumption sufficient weight to unbalance the evidence in favor of a verdict against suicide. The mere existence of the presumption would support, but would not demand, a verdict that death was not suicidal. It is in this sense, and in this sense alone, that *Templeton,* supra, held that the presumption disappeared only in the jury room and that *Belch,* supra, held that the presumption *could have* the effect of evidence. In that sense both *Templeton* and *Belch* stand for the proposition that where there is no evidence, either direct or circumstantial, tending to show that death was a result of suicide, a verdict is demanded, that the death was not suicidal.

For an excellent discussion of the confusion and anomalies existing in the several jurisdictions regarding the presumption against suicide see White, Presumptions in Violent Death Cases, American Bar Association Section of Insurance, Negligence and Compensation Law (1960), pp. 252-264.

■ The query now is whether the evidence in this case demands a finding that the death of the insured resulted from an act on his part of intentional self-destruction. If so then all of the points of law numerically listed above in Division 1 of the opinion, except that listed in item 4, disappear and vanish from consideration as they have been eliminated from the case.

The young lady who was with the insured when the death occurred and who was an eyewitness to the event testified: "So

then he said if I didn't [marry him] he was going to shoot himself." No more positive or certain declaration of intention on the part of the insured could have been made. Following that he produced the loaded pistol, put it to his head and told the young lady that he was going to count five and if she did not, within that interval, agree to marry him he would shoot himself. Again, there was a positive declaration of intention—both as to the act and its result. He tormented her by clicking his fingernail on the trigger, saying "Now just listen to that;—when my finger touches the trigger it's going off." He counted slowly to five, relented and told the young lady "I'm going to give you one more chance. I'm going to count to three." He counted to two and after that "the gun went off."

When the deceased placed the gun to his head asserting that he would shoot himself and the gun was fired, it cannot be disputed that the resulting death was foreseen and expected and the natural and probable consequence of his act. "Where one places a loaded pistol to his head and voluntarily pulls the trigger, knowing the gun to be loaded and lethal, nothing more appearing, it is unquestionably no accident that his action results in his injury or death, nor can his death or injury be said to have been effected by accidental means." *Thompson v. Prudential Ins. Co. of America,* 84 Ga. App. 214, 219 (66 SE2d 119).

"There being no conflict in the evidence as to the physical facts connected with the death of the insured, and these facts, with all reasonable deductions and inferences therefrom, over-coming the presumption . . . that he did not kill himself, or that his death was accidental, and demanding a finding that he came to his death by his own hand and intentionally" and the accident policy sued on containing the special provision that the policy does not provide any benefit on account of any loss which results from self-destruction, a verdict was demanded for the defendant. *Hodnett v. Aetna Life Ins. Co.,* 17 Ga. App. 538, supra; *New York Life Ins. Co. v. King,* 28 Ga. App. 607 (112 SE 383); *Supreme Forest Woodmen Circle v. Newsome,* 63 Ga. App. 550, 565 (2) (11 SE2d 480); Boswell v. Gulf Iife Ins. Co. (5th Cir.), 227 F2d 578.

The trial court erred in denying the defendant's motion for judgment notwithstanding the verdict.

*The judgment is reversed with direction that final judgment be entered in the case in favor of the defendant. Hall, Eberhardt and Russell, JJ., concur. Frankum, J., concurs in the judgment only. Felton, C. J., Nichols, P. J., Jordan and Pannell, JJ., dissent.*

JORDAN, Judge, dissenting. I dissent from the conclusion reached by the majority since I cannot reconcile the facts of this case with the language used by the Supreme Court of Georgia in the *Templeton* and *Belch* cases, supra, and the result reached by the court in those cases. In both cases the Supreme Court reversed this court on the questions here being considered. In my opinion the facts in the *Belch* case come closer to demanding a verdict of suicide than do the facts in this case.

The facts recited in the majority opinion and replete throughout the record show an apparently normal, healthy, fun-loving youth without the slightest outward manifestation of worry or concern. Such facts shine brightly on the presumption against suicide and brilliantly illuminate it. They bolster and fortify it so as to clothe it with an almost impregnable armor. To keep it from the jury room under such circumstances it must be assaulted with facts and circumstances so overwhelmingly powerful that when viewed from every possible legal point would sustain no other finding save that of suicide. *Horn v. Preston*, 217 Ga. 165 (1) (121 SE2d 775). I do not think the facts of this case can meet that test.

Justice Mobley, speaking for the court in *Belch*, indicated that where *"there were actual witnesses to the suicidal act"* (emphasis supplied) the granting of a directed verdict or judgment n.o.v. might be justified in spite of the presumption against suicide. He properly prefaced this by saying *"where there is no conflict in the evidence,"* for certainly the fact that one person saw another shoot himself with a weapon would not ipso facto demand a verdict of suicide. Self-destruction in such cases can be the result of accident, such as a person carelessly examining the weapon to "see if it is loaded," or where one is playing with a weapon in the genuine belief that it is harmless. The mere fact

that such an occurrence has an eyewitness is not of itself determinative of the question of suicide. I do not think this case fits into this so called "niche" stated in the *Belch* case, as contended by the plaintiff in error.

But actually we do not have an eyewitness in this case. In the absence of proof to the contrary we must assume that it was dark at midnight. The young lady present at the time was only an "earwitness" for she stated "actually I don't know what he did, I just heard it click," and "whether he actually put his finger up there and pulled it, I don't really know" and "I didn't see anything, I just heard the click" and "I don't remember seeing which hand it was . . . well, it was pretty dark." Thus, the only person present could not testify precisely as to the cause or manner in which the gun was discharged. Such testimony leaves this question open to conjecture. This, coupled with the young lady's testimony that just before the instant of firing (at the count of two) "I moved my head sideways, . . . I was trying to get my head away was the main thing," would reasonably support the inference of accidental discharge resulting from her sudden movement due to the "temple to temple" position they were in at that instant. The reasonableness of such an inference must be viewed in the light of all the circumstances surrounding the incident, the "chance" meeting of the deceased and the young lady only an hour or so before, the deceased's further plans for the weekend, his contentment with his job, and the complete lack of evidence pointing toward a worried or unhappy state of mind. If the deceased actually intended to end his life, such intention was outwardly manifested only a few minutes before the act. Can the human mind make such a calamitous decision in a matter of minutes completely contrary to all previous thought and action? I seriously doubt that it can. Human experience teaches us that normal suicide is the result of weeks or months or even years of brooding and reflection over problems apparently very serious to the troubled mind. Not one iota of evidence in this case points in that direction.

I am aware of the result reached in *Thompson v. Prudential Ins. Co. of America*, 84 Ga. App. 214 (66 SE2d 119), and sim-

ilar cases involving so-called "Russian roulette." I agree with the result reached in those cases where the evidence clearly shows that the deceased voluntarily and intentionally and knowingly places a loaded weapon to his head and pulls the trigger. The evidence here is far from being that clear, and due to the lack of positive evidence on this point we cannot conclude as a matter of law that this deceased reached his death in this manner.

It would be hard to envision a situation where the presumption against suicide was more forcefully supported by the facts than in this case. Under such circumstances the presumption should only vanish when a jury in considering all the facts and circumstances determines that the preponderance of the evidence is against the theory of accident. *Templeton v. Kennesaw Life &c. Ins. Co.*, 216 Ga. 770, 773, supra. As stated in headnote 1 (5) of the majority opinion in the present case: "Where there is direct or circumstantial evidence, either or both on each side in any combination, showing or tending to show respectively that death was or was not produced by suicide, the presumption against suicide is not eliminated and a jury question is presented."

As was said by the court in *Templeton* and repeated in *Belch*, "Courts should be careful, in the absence of a direct mandate of law, to take away from juries questions that time and experience have proven should be left exclusively for determination by the jury."

Although the evidence in this case would authorize a finding of suicide, I think that the facts were sufficient to support the finding of the jury that the deceased did not commit suicide. In my opinion the court did not err in refusing to grant the defendant's motion for judgment notwithstanding the verdict.

I am authorized to state that Nichols, P. J., concurs in this dissent.

PANNELL, Judge, dissenting. Regardless of what might be the proper interpretation of the decisions of the Supreme Court in *Templeton v. Kennesaw Life &c. Ins. Co.*, 216 Ga. 770, 773 (119 SE2d 549), and *Belch v. Gulf Life Ins. Co.*, 219 Ga. 823 (136 SE2d 351), it is my opinion that there is evidence to authorize a finding of accidental death in the present case. The testimony of the young lady, as to the occurrence wherein the insured died

from a bullet wound in his head, that the deceased insured threatened at one time to shoot at the count of five but failed to shoot at the count of five, then put his head next to hers, his left temple against her right temple, said he was going to give her one more chance, he was going to count to three, that during this countdown he kept clicking his fingernail on the trigger and kept saying, "Now, just listen to that now, when my finger touches the trigger, it is going off," then before the pistol fired she moved her head and the pistol went off at the count of two, is sufficient to authorize a jury to find that he was clicking the trigger when the young lady moved her head, and this movement caused him to unintentionally pull the trigger rather than merely clicking the trigger with his fingernail. Under these facts, the finding of accidental death within the terms of the policy would be authorized.

I am authorized to state that Felton, C. J., concurs in this dissent.

### On Motion for Rehearing.

BELL, Presiding Judge. In her motion for rehearing the plaintiff charges that this court in the opinion carrying with it the judgment of reversal ignored certain evidence showing that the insured's death was accidental. The evidence referred to is a certificate of the death of the insured completed by "Tom Compton, Coroner." The certificate shows that the immediate cause of death was "Contact gunshot wound of head with destructive brain damage" and that the injury occurred through "Accidental discharge of a gun."

*Code Ann.* § 88-1118 provides that certificates filed under the provisions of *Code Ann. Ch.* 88-11, pertaining to the registration of births and deaths, "shall be prima facie evidence of the facts stated therein."

The fault of evidence admitted under this provision is that it is hearsay evidence, and thus, *Code Ann.* § 88-1118 amounts to an exception to the hearsay rule. This initial fault is further compounded by including in the certificates statements based on hearsay—that is upon information supplied by other persons to the person completing the certificate—and by including in the certificates statements of conclusions of the person completing

the certificate, which may be either conclusions based upon hearsay or conclusions as to which the person completing the certificate would not be qualified as an expert or otherwise to testify personally.

The language of *Code Ann.* § 88-1118 makes a death certificate completed and filed in accordance with the provisions of *Code Ann. Ch.* 88-11 "prima facie evidence of the *facts* stated." This necessarily means that only "facts" contained in the certificate are accorded the dignity of constituting prima facie evidence. While *Code Ann.* § 88-1116 (4) directs the official completing the certificate to include whether the death was *probably* accidental, suicidal or homicidal, that requirement amounts to nothing more than authorization to express an opinion, surmiss or conjecture as to the probabality of the means of death. The expression of an *opinion, surmise* or *conjecture* as to the *probability* of the means of death is not a statement of an ultimate fact and not being a statement of fact expressions of that nature are clearly excluded by the statute from constituting prima facie evidence. See Equitable Life Assur. Soc. v. Stinnett, 13 F2d 820, 822 (1).

Such a statute is in derogation of the common law. Mutual Life Ins. Co. of N.Y. v. Bell, 147 Fla. 734 (3 S2d 487); Bishop v. Shurly, 237 Mich. 76 (211 NW 75). Being in derogation of common law, it must be strictly construed. *Foster v. Vickery,* 202 Ga. 55, 60 (42 SE2d 117) and citations.

Under the rule of strict construction that must be applied to *Code Ann.* § 88-1118, a death certificate is incompetent to prove particular matters stated in the certificate (1) where the statement is based on hearsay and not upon the personal knowledge of the physician or official completing the certificate and (2) where the statement is a statement of opinion to which the physician or official would not be qualified to testify personally. In these instances the statements contained in the certificate are not statements of "fact" within the meaning of *Code Ann.* § 88-1118, and the exception to the hearsay rule is inapplicable. Although there is some foreign authority to the contrary, we consider that the rule stated here represents the better view and the preponderance of authority. See, *e.g.:* Equitable Life Assur. Soc. v. Stinnett, 13 F2d 820, supra; Morton v. Equitable

Life Ins. Co., 218 Iowa 846 (254 NW 325, 96 ALR 315); Kentucky &c. Ins. Co. v. Watts, 298 Ky. 471 (183 SW2d 499); Backstrom v. N.Y. Life Ins. Co., 183 Minn. 384 (236 NW 708); Callahan v. Conn. General Life Ins. Co., 357 Mo. 187 (207 SW2d 279); Welz v. Commercial &c. Accident Assn., 40 NYS2d 128 (266 App. Div. 668); Carson v. Metropolitan Life Ins. Co., 156 Ohio St. 104 (100 NE2d 197, 28 ALR2d 344). *Contra:* Branford Trust Co. v. Prudential Ins. Co., 102 Conn. 481 (129 A 379, 42 ALR 1450). On this subject generally, see: Ann. 17 ALR 366; Ann. 42 ALR 1455; Ann. 96 ALR 324; Ann. 28 ALR2d 352; 27 New York University Law Review 158; 32 CJS 827-828, Evidence, § 638.

The coroner's statement in the certificate in question, that the insured's death occurred through "Accidental discharge of a gun," was a statement of mere opinion and not one of fact. Thus, it did not constitute prima facie evidence. Further, it was hearsay not within the exception provided by *Code Ann.* § 88-1118. As hearsay, this evidence of the accidental death of the insured, though admitted without valid objection, had no probative value whatever. *Eastlick v. Southern R. Co.,* 116 Ga. 48, 49 (42 SE 499); *Higgins v. Trentham,* 186 Ga. 264 (1) (197 SE 862); *Fuller v. Fuller,* 213 Ga. 103, 104 (97 SE2d 306).

"The Georgia courts steadfastly declare that hearsay has no probative value. This means what it says. In this state, hearsay alone will not support a verdict." Green, Georgia Law of Evidence (1957 Ed.) § 222, p. 501.

*Motion for rehearing denied.*

Chief Judge Felton and Judges Hall and Eberhardt concur with these expressions.

Judges Frankum and Russell concur only in the judgment denying the motion for rehearing.

Chief Judge Felton does not concur in the judgment denying the motion for rehearing.

Presiding Judge Nichols and Judges Jordan and Pannell do not concur in the judgment denying the motion for rehearing but take no position on the discussion on the motion as they consider it unnecessary in light of their views on the case.

BELL, Presiding Judge. *Addendum.* It seems advisable to

point out that there is in this case no *holding* of law sufficient to constitute a binding precedent on anybody. The case as published is nothing more than an evenly balanced series of views with four judges representing one and four judges another. One judge agrees with the reasoning of neither but does concur in the judgment of reversal. A judgment of the court is made possible only by the circumstance of numbers and the duty of all of the judges to go one way or another.

This situation displays the confusion existing in the phase of the law under consideration and dramatically demonstrates that this court cannot alleviate the chaos. It must remain for higher authority to do so.