41251. METROPOLITAN LIFE INSURANCE COMPANY
v. PLUMSTEAD.

ARGUED APRIL 5, 1965—DECIDED APRIL 29, 1965.

632

*Smith, Ringel, Martin & Lowe, Sam F. Lowe, Jr., Edward F. Kern,* for plaintiff in error.

*Sanford R. Karesh,* contra.

RUSSELL, Judge. ■ This court has twice held in cases involving accidental death clauses in insurance policies where the defense of suicide was urged, that the presumption of fact against suicide disappeared from the case, and the Supreme Court has twice reversed the holding. *Templeton v. Kennesaw Life &c. Ins. Co.,* 216 Ga. 770 (119 SE2d 549); *Belch v. Gulf Life Ins.*

*Co.*, 219 Ga. 823 (136 SE2d 351). In *Belch*, among the facts stated as necessary to be considered in raising an inference contrary to that of suicide, is whether the deceased is a person who is likely to be joking rather than serious, whether shortly before the death he was making plans for the future which would be carried out only if he were alive, whether, if he is shown to have had the intention, there was time for him to abandon it, and so on. All of these things may make a conflict in evidence, and the presumption against suicide is itself "evidence going to support a verdict of accident."

A contrary result is not required by *Liberty Nat. Life Ins. Co. v. Power*, 111 Ga. App. 458 (142 SE2d 103) both because the division of the court in that case is such that it has no value as a precedent, and because the facts are different. Here the deceased, a 14-year-old boy, stated that he was joking immediately before the gun went off. It was not shown that he was despondent or upset at any time, and all the evidence showed him to be the sort of boy who would not voluntarily take his own life. He was wrapped up in plans for his immediate future and felt happy about them. He was a boy who normally enjoyed joking and playing tricks. He was having no serious disagreement with the girl he was talking to at the time as Power had. There was a vast difference in the maturity of the two lads as shown by the fact that one was 14 and the other 20. The evidence here amply authorizes the finding that the death was not suicide.

■ Additionally, the plaintiff in error contends that, even if not suicide, the death did not occur by accidental means and the plaintiff is not entitled to recover. This is the same policy clause with which the Supreme Court was dealing in *Belch* and *Templeton*, supra. In both these cases the deceased pulled the trigger of his firearm in such manner that the resulting shot must necessarily result in his death. In both cases the Court of Appeals held the beneficiary of the policy was not entitled to recover, and in both cases the Supreme Court reversed. If the fact that the insured pulled the trigger of the gun unintentionally would result in the death not being through accidental means, then the Supreme Court would necessarily have affirmed the judgment of this court although for a different reason. In *Belch* the

Supreme Court noted this policy provision in its opinion. In *Templeton*, it left undisturbed the first division of the opinion in the same case (102 Ga. App. 867, 118 SE2d 247). It was there stated, citing 12 ALR2d 1250: "According to the great weight of authority, in determining whether or not the insurer is liable under these circumstances, where the policy provides for benefits in case of death by external, violent and accidental means, where the means producing death were external and violent, there is a presumption, in the absence of evidence to the contrary, that the means were also accidental." See also *Schneider v. Metrolopitan Life Ins. Co.*, 62 Ga. App. 148 (7 SE2d 772).

To be an accident, this death must not have been the result of intent on the part of the deceased. "Very clearly, to our minds, a death by accident does not come within the description of dying by one's own hand. There must be an intent to commit suicide. Even though it be but the intent of a drunken man, however, it is none the less an intent." *Equitable Life Assur. Soc. v. Paterson*, 41 Ga. 338, 367. If not done by his intent, it is, as to him, an accident. As pointed out in *Thompson v. Prudential Ins. Co. of America*, 84 Ga. App. 214 (66 SE2d 119) one may shoot oneself under such circumstances that the death is neither suicide (intentional self-murder) nor accident, as where one intentionally pulls the trigger of a revolver knowing one of six cylinders to contain a live bullet, on the theory that under the law of statistical averages he will not shoot himself. "Accidental means" was defined in that case as including an intentional act effecting an unusual or unexpected consequence; where injury results from a voluntary act as to which some slip or mishap occurs.

In the present case the shotgun was resting on the floor between the insured's knees, pointing directly at the insured's neck, the end of the muzzle 3.5 inches away. It could only be fired by pulling the trigger. If the gun was in working order and loaded with a live cartridge and the trigger pulled in that position, at that distance, then the only result possibly to be anticipated was that the bullet would blast through the insured's neck and kill him. Under these circumstances there are only two alternatives: the insured intended to pull the trigger or he did not so intend. He had sufficient mind to form the intention, and

sufficient knowledge to know the inevitable consequences of this act. Therefore, if he designedly pulled the trigger, the act was suicide. If he did not pull the trigger intentionally, whatever act he did was attended by the unforeseen consequences that the trigger was released and the shot exploded; that is, his movements, whether voluntary or not, resulted in the unexpected slip or mishap of the trigger being moved and the firing pin exploding the cartridge. The only alternatives possible are suicide or an accidental injury inflicted by violent, external and accidental means.

The trial court did not err in overruling the motion for a new trial.

*Judgment affirmed. Felton, C. J., and Jordan, J., concur.*