## 51510. LINCOLN INCOME LIFE INSURANCE COMPANY v. PARKER.

WEBB, Judge.

Angela Sue Parker filed her complaint against Lincoln Income Life Insurance Company seeking to recover as named beneficiary on a policy of life insurance issued by defendant on the life of Edward Parker, Angela's deceased husband. The insurance company urged as a defense that the death of Edward was due to suicide within two years of the policy date and that under the terms of the policy, all that was owed was a return of premiums which was paid into the registry of the court.

Prior to trial Angela died and her administratrix was substituted as party plaintiff. At trial the issue presented to the jury was whether Edward met his death by suicide or by accident. The jury found against suicide and returned a verdict in plaintiff's favor for $25,000, the face amount of the policy. The company appeals, complaining of the overruling of its motions for directed verdict, for judgment n.o.v., and for new trial on the general grounds and one special ground.

The evidence reveals that Edward died of a gunshot wound in the head on November 4, 1972. Angela was indicted and tried for his murder but was acquitted. No transcript of the evidence of the murder trial is available, nor could the pistol which fired the fatal shot be produced at trial.

Angela testified by deposition that on the day in question she came home late in the evening from baby sitting; that as she walked in Edward was sitting on the couch in the living room and had a mixed drink in front of him on the coffee table; that in her opinion he was drunk,

and she picked up the drink, poured it out in the kitchen, and "then I had a few words with my husband. I told him I had decided to go to Dad's [Mr. Moore's] place and spend the night and I would come back in the morning. We would talk and would feel better. Then I had locked the keys up inside the car so I went back in and told him I wasn't going any place." She stated that she had never seen Edward drink like that before and wanted to find out later why he was drinking so heavily.

Angela further testified that she walked into the bedroom, and Edward came in behind her and closed the door; that she lay down across the bed and Edward, when she last saw him alive, was standing at the foot of the bed beside the chest of drawers; that she did not see him get the pistol, which was usually locked up in the glove compartment of his car; that she did not see him when the pistol went off; that she heard a drawer open just before the shot, and that he must have gotten the pistol from the chest of drawers where he was standing; that he had shot the gun in the house before; that after she heard him fall she walked around and saw him lying in blood and started screaming; that she remembered asking him why he did it; that she heard only one shot, and when she heard him fall she thought he was trying to scare her; that she thought maybe it was a blank and that maybe he was "just playing around. I didn't know it was for real until I saw him lying there"; and that there was no one else in the room with them and she didn't shoot him.

Shirley Johnson, Angela's sister, testified that the night before his death Edward went to a bingo game, was not despondent but was happy, jolly and laughing.

R. C. Moore was present in the house at the time of death and testified that Edward was drinking heavily but was not despondent. It was his testimony that two shots, rather than one, were fired.

Raymond Flake of the sheriff's department testified that Edward had a bullet hole "just about opposite the left temple"; (Angela could not remember whether Edward was right-handed or not); that after the body was removed another bullet hole was found in the floor directly under his back; that he found two spent shells; that he found no abrasion or powder burns on Edward's hands nor other

evidence that the pistol had been in his hand; that Angela stated at the scene that "her and her husband had been having some words about some bills that they owed and about her husband's ex-wife. And he told her that he would just end it all. . . And . . . she heard a noise and looked up and he was falling, and she said she told him, said you can't kill yourself with a blank pistol. And then she got up and looked and saw the blood coming out of his head."

Dan Timmerman of the sheriff's department testified that "Mrs. Parker told us that she and her husband were both in the bedroom and were having a discussion over debts and his ex-wife and other things, and he got tired of it and said he was tired of the whole mess and pulled out a gun which she thought was a blank pistol. She told him he couldn't kill himself with a blank. When she got up off the bed she saw him lying back up against the dresser with blood coming out of his head. That's when she called me." The officer further testified the pistol was a "Saturday night special" and "they've got a reputation of not being too reliable."

In contradiction of the officer's testimony, Angela testified that there had been no discussion about debts or alimony and that there had been no argument at all. R. C. Moore also testified that the house had been quiet and peaceful before the shots were fired.

1. In *Belch v. Gulf Life Ins. Co.,* 219 Ga. 823 (136 SE2d 351) and *Power v. Liberty Nat. Life Ins. Co.,* 221 Ga. 305 (144 SE2d 389), the Supreme Court on certiorari reversed the rulings of this court that the evidence demanded a finding that the insured's death resulted from suicide. We are not prepared to demonstrate that the result here should be any different from that reached by the Supreme Court in *Power,* supra, and we hold that the motions for directed verdict, for judgment n.o.v., and for new trial on the general grounds were properly overruled.

2. At the conclusion of the charge the insurance company made the following objection: "We except to the charge of the court which were the quotation of charge No. 1, because it practically directs a verdict in favor of the plaintiff. That if there is a conflict of evidence that the presumption should be applied by the jury, and we don't

think that's a correct statement of the law of Georgia on the subject." The objection is not well taken since it is correct that the presumption against suicide is applied where there is a conflict in the evidence. *Belch v. Gulf Life Ins. Co.,* 219 Ga. 823, supra. It is axiomatic that in civil cases other objections to the charge not made below cannot be made for the first time here.

*Judgment affirmed. Deen, P. J., and Quillian, J., concur.*

ARGUED JANUARY 14, 1976 — DECIDED JANUARY 30, 1976 — REHEARING DENIED FEBRUARY 18, 1976.

*Fulcher, Hagler, Harper & Reed, J. Walker Harper, David H. Hanks,* for appellant.

*Claud R. Caldwell, Starkey S. Flythe,* for appellee.