58981. SOUTH GEORGIA BROKERS, INC. v. FIDELITY BANKERS LIFE INSURANCE COMPANY.

QUILLIAN, Presiding Judge.

Plaintiff was the beneficiary under an insurance policy insuring the life of Wilbur I. Camp. Camp died November 12, 1969 from a gunshot wound to the head. Defendant had issued a life insurance policy on Camp November 27, 1968, with a two-year suicide clause.

Defendant refused to pay. Plaintiff brought this action and appeals from a jury verdict for defendant. *Held:*

1. Plaintiff contends the court erred in not granting judgment in its favor notwithstanding the jury verdict for defendant. We do not agree. The insured was found alone in his locked office with a revolver lying either on or near his right hand. He had been shot in the right temple area from a weapon pointed slightly upward and sufficiently close to inflict powder burns. Four shots had been fired. Three holes were found in the wall. Camp's wife arrived at the mall where his office was located requesting to be admitted as the mall was locked. The janitor admitted her and her son after being told by her that she was "on a case of emergency" [sic], and she unlocked the door to the insured's office where he was found slumped over his desk, sitting in a chair.

Mrs. Jackson, a manager of another store in the mall, stated that the "last few months before [the insured] died" he was "just skin and bones . . . just a walking skeleton. He could hardly walk." The week prior to his death he had told her "he could hardly walk because he has so much pain in his legs . . ." He had been in the hospital recently and had lost a lot of weight. He had hurt his back while in the military service and stated that his legs hurt him. People were aware that he drank frequently at the office for the past "two or three years." However, a few days prior to his death the insured had called the police and stated that "he thought someone was trying to kill him." The chief of police stated that he was "familiar with his condition and his drinking." They were of the opinion he was intoxicated when he made the call. The police chief went to the mall when he received the call but found no one.

The doctor who treated the insured after the injury testified that there were powder burns in the head wound: "It was characteristic of a close gunshot wound, but not specifically characteristic of someone holding the gun himself."

The .38 caliber revolver found in the deceased's lap on or near his right hand, would hold only five shots. One chamber was blank. There were four expended shells. There were three holes in the wall, one bullet was found

inside the deceased's skull, one wound was found on the deceased's left forearm, and one witness testified that he saw what appeared to be "a spent bullet or slug" on the deceased's desk — after the police had investigated the incident.

When the death of a person from external and violent means is established, there is a " 'presumption against suicide which the law recognizes as arising out of the instincts of nature, one of which is the love of life.' " *Belch v. Gulf Life Ins. Co.*, 219 Ga. 823, 825 (136 SE2d 351). "The presumption against suicide is evidence going to support a verdict of accident, and it was a jury question as to whether or not the presumption was overcome by the evidence to the contrary." Id. at 827. " '*Where* the fact of death is established, and the evidence points equally or indifferently to accident or suicide as the cause of it, the theory of accident rather than of suicide is to be adopted.' [Cit.] *Whether* the evidence in the instant case pointed equally or indifferently to the theory of accident or suicide was a question for the jury." (Emphasis supplied.) Id. at 827-828. From our review of the evidence, there was a conflict as to whether the insured's death was the result of suicide and the trial court properly denied plaintiff's motion for judgment n.o.v. *Power v. Liberty Nat. Life Ins. Co.*, 221 Ga. 305, 306 (144 SE2d 389); accord, *Belch v. Gulf Life Ins. Co.*, 219 Ga. 823, supra.

2. The trial court did not err in failing to give plaintiff's requested Charge No. 2, where the subject was fully and correctly covered in the charge given. *Hardwick v. Price*, 114 Ga. App. 817 (3) (152 SE2d 905); *Harkness v. Harkness*, 228 Ga. 184 (2) (184 SE2d 566).

3. Plaintiff alleges the court erred in admitting a statement of the janitor made to a witness shortly after the shooting. We agree. The janitor and Mrs. Camp, the wife of the insured, entered the locked office and they saw him slumped over the desk, bleeding from a wound to the right temple. There was a large amount of blood from the wound. The revolver was lying in or near the right hand. Mrs. Camp called the ambulance and it arrived — with the police, "quick."

Before the ambulance or police arrived Dr. and Mrs. Jackson were leaving the mall where she was the

manager of a store, and she called for the janitor to let them out of the locked mall. The janitor told her: "Lord, Miss Jackson, come here quick. Mr. Bill done shot hisself . . ." [Sic.] Plaintiff's objection to this testimony was overruled.

Our Code permits "[d]eclarations accompanying an act, or so nearly connected therewith in time as to be free from all suspicion of device or afterthought, [to] be admissible in evidence as part of res gestae." Code Ann. § 38-305 (Code § 38-305). "The admissibility of such declarations does not depend upon any arbitrary time or general rule for all cases, but is left to the sound discretion of the court in determining from the time, circumstances and statements in question, whether declarations meet the requirements of being free from 'all suspicion of device or afterthought.' *Davis v. Metropolitan Life Ins. Co.,* 48 Ga. App. 179 (172 SE 467)." *Aetna Life Ins. Co. v. Jones,* 80 Ga. App. 472, 479 (56 SE2d 305).

Conceding arguendo that the court correctly concluded the statement fell within the res gestae, "[a]n exclamation of a bystander which merely expresses opinion or conclusion is inadmissible" as an exception to the hearsay rule under the res gestae exception. *Camp v. Ledford,* 103 Ga. App. 197, 199 (119 SE2d 54). Accordingly, the Supreme Court held that "[a]n exclamatory affirmation, such as 'Sheppard has killed himself,' though a part of the *res gestae,* is not evidence of the matter of fact which it affirms, where all the circumstances show that it was the expression of a mere opinion." *Travelers Ins. Co. v. Sheppard,* 85 Ga. 751 (7) (12 SE 18). Again, in *Henderson v. State,* 210 Ga. 680, 682 (82 SE2d 638), a case in which there was no witness to the actual shooting, the court held that although "[s]tatements made by bystanders may be admissible in evidence as part of the res gestae . . . The fact that a statement was made immediately after a shooting . . . would not make it admissible in evidence as a part of the res gestae where the statement amounted to no more than a conclusion of the witness."

It cannot be rationally argued that the statement was not a conclusion of the witness based upon facts he observed after the shooting occurred, and was admitted

for the sole purpose to prove the truth of the matter stated therein — that the insured shot himself. Thus, it was hearsay and inadmissible under the res gestae exception. Further, the Supreme Court has held that it was the ultimate fact to be determined by the jury. *Henderson v. State*, 210 Ga. 680, 682, supra; Code Ann. § 38-1708 (Code § 38-1708); Green, Ga. Law of Evidence 283, § 113; Agnor's Ga. Evidence 136, § 9-3.

Accordingly, we cannot say as a matter of law that the admission of the inadmissible evidence did not prejudice the plaintiff.

*Judgment reversed. Smith and Birdsong, JJ., concur.*

ARGUED NOVEMBER 20, 1979 — DECIDED JANUARY 24, 1980 — REHEARING DENIED FEBRUARY 18, 1980 —

*Stephen E. Franzen, G. Gerald Kunes,* for appellant. *Glenn Whitley, Bob Reinhardt,* for appellee.